## MASICH v. UNITED STATES SMELTING, REFINING & MINING CO et al.

No. 7048.   Decided March 25, 1948.   (191 P. 2d 612.)
Rehearing Denied June 29, 1948.

102

See 71 C. J., Workmen's Compensation Acts, sec. 1494. Workmen's Compensation Act as exclusive of remedy by action against employer for injury or disease not compensable under act, see note, 100 A. L. R. 519.

*Clarence M. Beck* and *Elias Hansen,* both of Salt Lake City, for appellant.

*Cheney, Jensen, Marr & Wilkins* and *Ray, Quinney & Nebeker,* all of Salt Lake City, for respondents.

LATIMER, Justice.

Appellant plaintiff in the court below, commenced an action for a declaratory judgment seeking to have the court determine his rights to institute a common law action for disability from silicosis contracted by him while in the employment of the defendant, United States Smelting, Refining & Mining Company. Plaintiff, in alleging his injuries states, in substance, that he is suffering from an

occupational disease known as silicosis, which he alleges not to be complicated with active pulmonary tuberculosis. It is not necessary to set forth in detail the particular acts of negligence alleged, as they, in substance and effect, charge the defendants with failure to furnish the plaintiff a safe place to work, and the specific acts are unimportant to this decision. Plaintiff further alleges that since 1935 the defendant, F. S. Mulock, has been Vice President of the corporate defendant, and the manager of the mine where plaintiff worked and that he has been in control and direction of the policy of the company and the personnel who were employed to work in the mine. Plaintiff further alleges that he is not totally disabled by the disease, and therefore disputes the defendants contention that his sole and exclusive remedy is under and pursuant to Chapter 42-1a and particularly Section 42-1a-3, U. C. A. 1943, and the amendments thereto, and defendant's further contention that the personal defendant is not liable for the action complained of. Plaintiff alleges further facts in support of his reasons for seeking a declaratory judgment. However, in view of the fact that we have elected to determine plaintiff's rights, these other allegations are not set forth.

Defendants, in answer, deny that they were guilty of any of the alleged acts of negligence and for the most part deny the other allegations of plaintiff's complaint. They affirmatively allege that at the time suit was instituted and at the present time, Section 42-1a-3 provided an exclusive remedy against an employer for disease or injuries to health sustained by an employee and arising out of the course of his employment, and that this act precludes plaintiff from suing on his common law right. That prior to instituting this action in the district court, the plaintiff filed with the Industrial Commission of the State of Utah, his claim for compensation under the provisions of Chapter 1a of Title 42, U. C. A. 1943. That in the claim filed, plaintiff alleged he had contracted silicosis while employed by the defendants and that said claim is now pending before that commission.

The case was submitted to the trial court on the issues as raised by the pleadings and pursuant to a stipulation which provided that the only issues to be presented to the district court and to this court on appeal were as follows: (1) Does the Utah Occupational Disease Disability Law, Chapter 1a, Title 42, U. C. A. 1943, as amended, furnish the exclusive remedy of the plaintiff against the defendant, United States Smelting, Refining & Mining Company, and bar the maintenance of a personal injury suit in the district court? (2) Does the same law bar the maintenance of a personal injury action in the district court as to the defendand F. S. Mulock? We believe our holding on the first issue makes a discussion of the second question unnecessary. Because of such stipulation and because, for the purposes of this suit alone, we assume the facts alleged in the pleadings to be true, we will treat only the questions of law involved.

While many of the sections of Chapter 42-1a, U. C. A. 1943, have some bearing on the interpretation that should be given this act, it is deemed necessary to set forth only those which are of controlling importance. Section 42-1a-3 is as follows:

"Exclusive Remedy Against Employer.
"The right to recover compensation pursuant to the provisions of this act for diseases or injuries to health sustained by an employee and arising out of or in the course of his employment, whether resulting in death or not, shall be the exclusive remedy against the employer."

Section 42-1a-13 provides as follows:

"Employer Liability for Compensation—Conditions When No Payment to Be Paid.
"(a) There is imposed upon every employer a liability for the payment of compensation to every employee who becomes totally disabled by reason of an occupational disease subject to the following conditions:

\* \* \* \* \*

"(2) No compensation shall be paid for a disease other than silicosis unless total disability results within one hundred twenty days from the last day upon which the employee actually worked for the employer against whom compensation is claimed.

"(3) No compensation shall be paid in case of silicosis unless during the ten years immediately preceding the disablement the injured employee shall have been exposed to harmful quantities of silicon dioxide ($SiO_2$) dust for a total period of not less than five years in this state and unless total disability results within two years from the last day upon which the employee actually worked for the employer against whom compensation is claimed."

## Section 42-1a-28 provides as follows:

"Occupational Diseases—Listed.

"For the purposes of this act only the diseases enumerated in this section shall be deemed to be occupational diseases:

\*    \*    \*    \*    \*

(27) Silicosis."

## Section 42-1a-29 provides as follows:

"Silicosis—Defined.

"For the purpose of this act 'silicosis' is defined as a chronic disease of the lungs caused by the prolonged inhalation of silicon dioxide dust ($SiO_2$) characterized by small discrete nodules of fibrous tissue similarly disseminated throughout both lungs, causing a characteristic X-ray pattern, and by variable clinical manifestations."

## Section 42-1a-30 provides as follows:

"ID. When Complicated with Other Diseases—Payments.

"In case of disability or death from silicosis complicated with tuberculosis of the lungs, compensation shall be payable as for disability or death from uncomplicated silicosis. In case of disability or death from silicosis when complicated with any disease other than pulmonary tuberculosis, compensation shall be reduced as provided in Section 51."

## Section 42-1a-49 provides as follows:

"(a) If the claim is made by an employee and based upon silicosis it must be filed within one year after the cause of action arises.
\*    \*    \*"

If we hurriedly scan the history and development of the law of compensation in this country, we first find the legislatures and courts dealing with accidental injuries arising out of or in the course of employment. These acts covered

the employee who was accidentally injured in the course of his employment, but failed to cover an employee who was rendered ill because of an occupational disease. Some jurisdictions extended the coverage of the act to include occupational diseases, but for the most part the employee suffering from an occupational disease was left to his common law right of action.

In this state the Workmen's Compensation Act, Utah Code 1943, 42-1-1 et seq., was construed to involve only accidental injuries, so that when an employee suffered an occupational disease, he was confronted with the necessity of establishing actual negligence on the part of the employer and was confronted by the common law defenses then available to the employer. This court recognized that the legislature had not occupied the field of occupational diseases when the Workmen's Compensation Act was passed; and so the employee suffering from disease was limited to his common law right of action. See *Young* v. *Salt Lake City,* 97 Utah 123, 90 P. 2d 174. The situation thus was that industry was required to share the cost of insuring the class of employees injured by accidents, while not being required to carry the burden of insuring those employees that were rendered ill because of diseases incidental to the business.

Shortly after this court decided the *Young* v. *Salt Lake City* case, supra, the legislature enacted the Occupational Disease Statute. Much of the wording of this act was taken from the Workmen's Compensation Act, and the first part of Section 42-1a-3, dealing with the exclusive remedy provision under the Disease Statute, is in all respects similar to the exclusive remedy provision under the Workmen's Compensation Act (Section 42-1-57).

The parties have exhaustively treated the interpretation of Section 42-1a-3, and each has, by transposition, made the act appear to sustain their respective contentions. We need not belabor this opinion with the respective claims, all we need do is to point out that a careful reading of the section convinces the members of this court

that the wording is ambiguous and susceptible of being interpreted in the manner contended for by both parties. Such being the case, the duty of this court is to arrive at the legislative intent.

In newly enacted legislation it is sometimes necessary in order to determine the legislative intent, to scrutinize an act to the extent of dealing with or transposing a phrase, a single word, or even a punctuation mark; but no such refined scrutiny is necessary in this case. This for the reason that for many years our legislature has been dealing with a companion act similar in phraseology and context; the Workmen's Compensation Act has been passed on repeatedly by this court, and the legislature has been content to accept the construction placed on that act by this court. The intent, purposes and objectives of the Occupational Disease Act, which is closely allied to the Workmen's Compensation Act, can be determined by reliance on former interpretations of the Workmen's Compensation Act without searching through the refinements of construction necessary, had the former act not been before the legislature on many occasions. In addition, the legislative intent in the Occupational Disease Statutes does not depend on the correlation or arrangement of words alone. Other and different reasons can be considered. One of the cardinal principles of statutory construction is that the courts will look to the reason, spirit, and sense of the legislation, as indicated by the entire context and subject matter of the statute dealing with the subject.

While it can be contended that this court has never directly passed on the exclusive remedy provision of the Workmen's Compensation Act, many decisions have indicated that the act operated on the employer-employee relationship, and that coexistent with this charge was an abrogation of the employee's common law right to sue the employer for any and all injuries suffered while in the course of his employment, except in those cases where the employer was not subject to the act or the common law remedy of the employee was expressly reserved by the act.

In addition to the decisions that will be hereinafter referred to, the bench and bar of this state have for many years assumed that the employee has no right of action for physical damages suffered in the course of employment, even though the statutes made no award for the injury, and the employee had no remedy. Notably present in this class is lack of a remedy to recover for pain and suffering.

In the case of *Peterson* v. *Sorensen,* 91 Utah 507, 65 P. 2d 12, an employee commenced an action in the district court for injuries sustained when he fell into an elevator pit. The employer had not complied with the requirements of the act in that he was not carrying compensation and had not qualified as a self-insurer. Under the statute this failure to meet the requirements of the act permitted plaintiff to commence an action in the trial court. Mr. Justice Moffat, speaking for the majority of the court said, at page 514 of 91 Utah Reports, page 16 of 65 P. 2d:

"* * * *an action as known to the common law by the servant against the master for an injury sustained by the former no longer exists in this State. That such is the law when the master complies with the Workmen's Compensation Act in the matter of carrying insurance may be conceded.* The injured employee is not, however, deprived of his common-law right of action against a non-complying employer. * * *" (Italics added.)

Again in the case of *Halling* v. *Industrial Commission, et al.,* 71 Utah 112, 120, 263 P. 78, 80, this court, speaking through Mr. Justice Hansen, stated:

"It will not be necessary to here consider the other provisions of the Workmen's Compensation or Industrial Act, except to observe that in the instant case the applicant must recover, if at all, the compensation provided for in such act. Under the provisions of Laws Utah, 1921, c. 67, § 3132, *it is only in the case of an injury caused by the employer's willful misconduct that an injured employee, or in case the injury results in death, his dependents, may recover damages in an action at law for a wrongful injury. When the injury is caused merely by the negligent act of the employer, the injured employee, or, when* the injury causes death, his dependents, *must be content to accept the compensation provided for by the act.* * * *" (Italics added.)

In the case of *Shurtliff* v. *Oregon Short Line R. Co.*, 66 Utah 161, 173, 241 P. 1058, 1063, the question involved the application of the Idaho Workmen's Compensation Act. Mr. Justice Straup, speaking for the court, stated:

"* * * But it is also true that a court will administer and apply the law of the forum or jurisdiction until the law of the situs is shown, sometimes expressed that in the absence of proof it will be presumed that the law of another state is the same as the law of the forum, and in this jurisdiction, as is many others, the presumption is extended to statutory, as well as to common law. *Grow* v. *Railroad Co.*, supra [44 Utah 160, 138 P. 398, Ann. Cas. 1916B, 481]. Under the statutes of this state, Comp. Laws Utah 1917, § 3132, and as amended by Laws Utah 1921, p. 175, known as the Workmen's Compensation Act of this state, *redress against an employer for personal injury of his employe not employed in interstate commerce must be had in pursuance of such statute, which remedy in such case is by the statute made exclusive.* * * *" (Italics added.)

In the case of *Murray* v. *Wasatch Grading Co.*, 73 Utah 430, 435, 274 P. 940, 942, this court, speaking through Mr. Justice Hansen, said:

"Since the enactment of the Workmen's Compensation Act in 1917, *the exclusive remedy of an employee who is injured in the course of his employment is the right to recover the compensation provided for in the Act*, Comp. Laws Utah 1917, § 3132, as amended by Laws Utah 1921, p. 175. * * *" (Italics added.)

This court again in the case of *Robinson* v. *Union Pac. R. Co.*, 70 Utah 441, 261 P. 9, 12, treated the subject of the exclusive remedy of the employee. That case involved an employer's right to recover from a third party for injuries occasioned to the employee while working on the premises of the employer. The interpretation of Section 3132, Compiled Laws of Utah, 1917, which is now 42-1-57, U. C. A. 1943, was discussed. The prevailing opinion in discussing the rights an injured employee might have, reads the phrase "against his employer" into section 3133, 1917 Compiled Laws of Utah, so that the section then read:

"If an employee under this act be injured or killed while in the course of his employment by another not in the same employment, he

or his dependents in case of death, shall be entitled to compensation and *no other remedy against his employer* unless \* \* \*." The legislature in effect approved this holding by amending the section and giving the employee or his heirs an option to either take compensation or proceed against the third party. (Italics added.)

The concurring opinion of Mr. Justice Straup, however, deals more specifically with the problem. Said he, at page 13 of 261 Pacific Reports:

"The question thus is, Is our statute as broad and comprehensive as is the Washington or Montana statute? I think not. That, I think, is evident by comparing our statute with that of either of such statutes. Our statute (section 3132), heretofore referred to, provides that 'the right to recover compensation pursuant to the provisions of this title for injuries sustained by an employee, whether resulting in death or otherwise, shall be the exclusive remedy against the employer', except where the injury is caused by the employer's wilful misconduct, etc. It is clear that such language is not as broad or as comprehensive as that contained in either the Montana or the Washington statute. In such respect our statute says that the right to recover compensation pursuant to the provisions of the title 'shall be the exclusive remedy against the employer' while the Washington statute says that it shall be exclusive as to all persons, and that payment made thereunder 'shall be in lieu of any and all rights of action whatsoever against any person whomsoever,' not only as against the employer as section 3132 provides, but as 'against any person whomsoever.' "

That our legislature when it occupied the accidental injury field intended to entirely abrogate an employee's right to sue an employer who had complied with the provisions of the act, for any and all injuries suffered by the employee while in the course of his employment is further evidenced by another provision of the original act passed in 1917. When this act was passed, Article 16, Section 5 of the Utah Constitution prohibited the legislature from abrogating the right of action to recover for death. This was later amended, but in order not to offend against the constitutional provision, then in existence, Chapter 100, Section 66, Laws of Utah 1917, provided:

"Employers who comply with the provisions of Section 53 of this Act *shall not be liable to respond in damages for injuries sustained by*

*their employes not resulting in death.* For injuries, however, resulting in death, the dependents of the deceased employe are given the right, within such time as the commission by rule shall prescribe, to elect (a) between bringing suit at law against such employer to recover damages for such death and in the event of suit said dependents must prove negligence on the employer's part before they can recover, or (b) to accept the benefits allowed to dependents of deceased employes by this Act in the event of death. *If they elect (b) they shall not be entitled to sue such employer at law to recover damages.* If they elect (a) they thereby forfeit any rights to compensation under this Act and in a suit at law shall not be entitled to recover damages from such employer if the deceased employe was himself guilty of contributory negligence, or if he assumed the risk, or if his death was due in whole or part to the negligence of a fellow servant. * * *" (Italics added.)

Section 53 refers to employers who have provided compensation. It will thus be observed that when an employer had qualified under the act, the legislature clearly expressed an intention to eliminate the common law action of an employee against the employer for injuries suffered by the employee, and to place the administration of the rights and remedies granted by the act in the hands of an administrative agency where the purposes of the legislation could be more expeditiously carried out. This provision denied the employee the right to bring a suit against his employer without regard to the compensability of the injury. Aside from the instances where the act itself created exceptions, it was not intended to divide the relationship so that if the compensation act failed to give complete redress, the injured employee could still resort to the courts to supplement the remedies given by the act. The same principles apply to the Occupational Disease Act.

Cases from many other jurisdictions could be cited wherein the courts of last resort have interpreted similar Workmen's Compensation Acts to have abrogated the employee's right to maintain an action at common law, even though the respective acts are not all-inclusive on every element of damages. Rather than make reference to all, we have elected to refer to the holdings of the Minnesota and California Courts.

While the Minnesota act is not similar in wording to our statute, as it does not make compensation the exclusive remedy against the employer, the reasoning applied by the Supreme Court of that state is in keeping with that of most of the other jurisdictions. In the case of *Hyett* v. *Northwestern Hospital for Women and Children,* 147 Minn. 413, 180 N. W. 552, 553, the Supreme Court of that state held an employee could not maintain an action for injuries for which no compensation was provided. In that case the employee sustained an injury to his pubic nerve, totally destroying the functions thereof, and rendering him permanently impotent. Finding no remedy under the Compensation Act for the particular injury, the employee instituted an action at law to recover damages.

"That the remedy so given and provided is exclusive of all others seems to be the prevailing opinion of the courts where the question has received attention. *Shanahan* v. *Monarch Engineering Co.,* 219 N. Y. 469, 114 N. E. 795; *Gregutis* v. *Waclark Wire Works,* 86 N. J. L. 610, 92 A. 354; *Peet* v. *Mills,* 76 Wash. 437, 136 P. 685, L. R. A., 1916A, 358, Ann. Cas. 1915D, 154; *King* v. *Viscoloid Co.,* 219 Mass. 420, 106 N. E. 988, Ann. Cas. 1916D, 1170. *Connors* v. *Semet-Solway Co.,* 94 M'sc. 405, 159 N. Y. S. 431, in which it was said that *Shinnick* v. *Clover-Farms Co.,* 169 App. Div. 236, 154 N. Y. S. 423, holding to the contrary had been overruled by *Jensen* v. *Southern Pacific,* supra [215 N. Y. 514, 109 N. E. 600, L. R. A. 1916A, 403, Ann. Cas. 1916B, 276]. If the case was not in effect there overruled it clearly was so disposed of by the later decision of the Court of Appeals in the Shanahan case above cited. The case of *Boyer* v. *Crescent Paper Co.,* 143 La. 368, 78 So. 596, takes the other view of the Louisiana Compensation Act and supports plaintiff in the case at bar. But to follow that rule would in a large measure be destructive of the main purpose and scheme of the statute, and deprive the employer of a right expressly granted him in return for his concession of liability for the nonactionable injury. It would result also in opening wide the door to double litigation in a great majority of the compensation cases. With the opportunity presented the discovery of negligence in some respect contributing to a particular injury would not be difficult, and thus the employer exposed to a second suit in which recovery could be had for pain and suffering, disfigurement of person, in addition to a recovery of compensation for actual disability under the Compensation Act. A personal injury received at the hands of a wrongdoer constitutes but one right of action. It cannot be divided into several parts to accord with

the elements of damages recoverable therefor. It presents a single controversy to be settled in a single action. Dunnell's Dig. 5167. That is elementary, and it is manifest that there was no intention on the part of the Legislature to change or abrogate it by the Compensation Act; and no such intention should be presumed by the court. On the other hand, it is clear that the intention of that body was to present to the employers and employes of the state a comprehensive act embracing their exclusive rights and remedies for accidental or other injuries suffered by the employe. *Morris* v. *Muldoon*, 190 App. Div. 689, 180 N. Y. S. 319. If the compensation so provided is deemed inadequate, or that the act should be made to include all or any of the common-law elements or ingredients of relief found in the negligence law, the change should come about by legislation and not by rule of court."

In 1917 the legislature of the State of California repealed certain provisions of the Workmen's Compensation Act then in force, and enacted Chapter 586, Statutes and Amendments to the Codes, 1917. Section 6 (b) of the new act provided as follows:

"Where such conditions of compensation exist, the right to recover such compensation, pursuant to the provisions of this act, shall be the exclusive remedy against the employer for the injury or death; * * *."

The Supreme Court of California in the case of *Alaska Packers' Association* v. *Ind. Acc. Comm., et al.*, 200 Cal. 579, 253 P. 926, 928, interpreted the exclusive remedy provision of the act. The opinion contains the following statement:

"The California Workmen's Compensation Act provides the only means by which an injured employee can recover compensation from his employer for injuries received in the course of and arising out of his employment, and it abrogates the common-law liability of the master for such injuries in the cases to which it is applicable *Netherlands American Steam Nav. Co.* v. *Gallagher*, 2 Cir., 282 F. 171, 183. The obvious intent of the act was to substitute its procedure for the former method of settling disputes arising between those occupying the strict relationship of master and servant, or employer and employee, by means of actions for damages. *Cooper* v. *Industrial Acc. Comm.*, 177 Cal. 685, 687, 171 P. 684. It substitutes a new system of rights and obligations for the common-law rules governing the lia-

bility of employers for injuries to their employees. *Western Indemnity Co.* v. *Pillsbury*, 170 Cal. 686, 692, 151 P. 398. When the specified conditions exist, the remedy provided by the act is exclusive of all other statutory or common-law remedies. *De Carli* v. *Associated Oil Co.*, 57 Cal. App. 310, 207 P. 282."

In passing to Section 42-1a-3, the Occupational Disease Statute, attention is again directed to the fact that the wording used by the legislature is exactly the same as the wording used in the Accidental Injury Act, Section 42-1-57. This court, prior to the enactment of the █ Occupational Disease Statute, having construed the provisions of the Compensation Act to have abrogated the common law rights of employees, we see no reason to place a different interpretation on the same provision of the Occupational Disease Act unless the legislature by clear and unmistakable language has indicated a contrary interpretation. We find no such language in the statutes.

Sutherland on Statutory Construction, Horack's 3rd Edition, Para. 4501, quotes the following principle on the intention of the legislature:

"* * * 'And then the office of all the judges is always to make such construction as shall suppress the mischief, advance the remedy, and to suppress subtle invention and evasions for continuance of the mischief, and pro privato commodo, and to add force and life to the cure and remedy, according to the true intent of the makers of the act pro bono publico.' "

With this principle to guide us, we analyze the effect of the two interpretations of the Diseases Act, as suggested by counsel for the respective parties. The first is that the legislature intended to divide silicosis into at least two stages of development, and make compensation the exclusive remedy for total disability, and permit the employee to pursue his common law right of action when partially disabled. The second is, the legislature occupied the field of those diseases enumerated in the act and as to those diseases the Occupational Disease Statute furnishes the exclusive remedy and no common law remedy is available to the employee.

If we were to adopt the first construction contended for, we would not only upset what has been long regarded as the law of this state in the accidental injury field, we would further render the Occupational Disease Act so confusing, uncertain and impractical that proper administration would be almost impossible. The courts would have jurisdiction to hear and determine all controversies on all diseases where the employee had not reached total disability, and then upon reaching this stage, jurisdiction would be transferred to the Industrial Commission. Causes of action would be split without adequate procedure to prevent the employer from being liable for double damages. If an employee could not meet the other requirements provided in the act, he could still resort to his remedy through the courts. An employee totally disabled would be limited in the amount he could recover because the maximum payable is limited by the terms of the act. Yet the partially disabled employee would only be limited by the conscience of the jurors. In many proceedings brought before the commission, efforts would be made by the employer to establish partial disability, to throw the employee back to his common law remedy and in many actions in the district court, efforts would be made to show total disability, to throw the action back to the commission. Neither tribunal nor commission could be certain as to which had jurisdiction. Without detailing all of the difficulties to be encountered were such an interpretation rendered, enough have been mentioned to indicate that one of the beneficient purposes of such acts, to avoid litigation, lessen expense thereof, and afford an efficient and speedy tribunal to determine and award compensation, would be thwarted.

The duty of a court to avoid a construction that will result in confusion or uncertainty is a duty recognized by all. The general rule in this regard is stated ▪ as follows, in 50 Am. Jur., Statutes, Par. 382:

"In the interpretation of statutes, a court should be astute in avoiding a construction which may be productive of much litigation and insecurity, or which would throw the meaning or administration of

the law, or the forms of business, into hopeless confusion or uncertainty. Indeed, it has been declared that statutes should never be given a construction that leads to uncertainty or confusion, if it is possible to construe them otherwise. Hence, an interpretation should, if possible, be put upon the provisions of a law which will permit the officials having the responsibility for its administration to proceed in an orderly manner. A particular construction will also be favored where it appears to be the only one which will afford a fixed, permanent, and certain rule to ascertain whether a particular case is included within or excluded from the operation of the statute. Similarly, where the construction of a statute involves a choice between uncertainties, the lesser should be chosen. However, where the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to rules of statutory construction."

Can we from the provisions of the act find support for the second interpretation set forth above? Section 42-1a-28, in enumerating the diseases deemed to be occupational, specifically sets forth silicosis. Section 42-1a-29 defines that disease, and Section 42-1a-30 provides that when ■ it is complicated with tuberculosis of the lungs, compensation will be as provided for silicosis, and when it is complicated with other diseases, compensation shall be reduced. Other sections deal with the requirements for total time of exposure to silicon dioxide dust, the length of time the employee must have been so exposed in this state, which employer is to be charged with payment of compensation if there has been more than one employer, and finally the time within which total disability must arise. These requirements, together with those included within other provisions of the act, indicate not only that the legislature intended to completely occupy the field of those occupational diseases enumerated in the act, but also indicated that silicosis was so thoroughly considered by the legislature and so completely dealt with in the act itself, that it can be said that the legislature did intend to fully deal with both the right and the remedy of the employee suffering from silicosis. The act grants to the employee the right to recover compensation from the employer regardless of fault on the part of the latter, but prescribes certain standards that must be

met by the employee before an award can be made. One of these standards is that the employee must be totally disabled. Until he reaches that stage, his injuries are not compensable. By limiting liability to total disability, the legislature excluded liability for partial disability, but in so doing it did not indicate an intention to reserve the common law right of action during the period of partial disability. There may be many reasons why the legislature considered the payment of compensation for partial disability to be impracticable. In setting up a practical method of imposing liability on the employer, the legislature was faced, in the case of silicosis, with dealing with a continuing and progressive disease that could be contracted while working for one employer and aggravated by conditions encountered while the employee was working for other employers. During these periods of different employment, the employee's degree of disability might be gradually increased. If a cause of action were to be split, the partially disabled employee would be required to pursue his common law remedy against each of the employers for whom he had worked. When he became totally disabled, his condition would not be the sole responsibility of the last employer; it would be chargeable against all employers who, through their negligence, had contributed to his illness.

Even conceding that a law which would fasten liability on each employer could be satisfactorily enforced so that each subsequent employer would be required to contribute a certain part of the sum awarded to the injured employee, it would seem more consistent with our procedure that had the legislature so intended, the administration of such an act would be placed with the Industrial Commission and not left with the courts. Such a procedure could be much more expeditiously handled by an administrative agency. The passage of the Occupational Disease Act shows that the legislators were cognizant of the fact that employees suffering from occupational disease were at a disadvantage in the courts, and that in order to afford them some reasonable protection, it was necessary to take the adjudication of the

rights and remedies from the courts and place them under control of the commission, where those rights could be protected and the remedies efficiently administered. If such reason prompted the legislature to so deal with the rights and remedies of a totally disabled employee, it would be hard to understand why the legislature would leave the partially disabled person to his doubtful legal remedy when by so doing, it would muddle and confuse rights, remedies, and forums, so as to defeat the very purposes of the act.

Had the legislature intended to permit the partially disabled employee to proceed against his employer, it would have been simple and easy for the legislature to have so stated. A plan similar to the one adopted by the Province of Ontario could have been provided for. This plan is described in Kessler's Accidental Injuries, (1931) p. 646. Under that system, the disease of silicosis was divided into three stages, as follows: (1) Ante primary silicosis; (2) Primary silicosis; and (3) Secondary stage of silicosis. The individual who was awarded compensation for ante primary silicosis recovered $500, those awarded compensation for primary silicosis, $1,000, and those considered in the secondary stage received ⅔ of their wage for life. This latter classification was considered as both serious and totally disabling.

The states of Pennsylvania and New York have construed their statutes dealing with the remedies of an employee when the disease from which he is suffering is scheduled in the act. The acts of both those states have the following provision:

"Compensation shall not be payable for partial disability due to silicosis."

77 P. S. § 1105; Workmen's Compensation Law, Consol. Laws, c. 67, § 66. Our act does not include this wording, but by making compensation payable only in the event of total disability, it clearly indicates an intent on the part of the legislature not to make compensation payable for partial disability.

In the case of *Moffett* v. *Harbison-Walker Refracteries Co.*, 339 Pa. 112, 14 A. 2d 111, decided 1940, the Pennsylvania Supreme Court construed the Pennsylvania act thus, at page 117 of 339 Pa., page 114 of 14 A. 2d:

"In construing the statute, which is all that is now involved, we are hardly assisted by cases from other states unless they construe substantially similar provisions. Plaintiff's brief asserts that 'The weight of authority is against defendant's position', and cites cases from other jurisdictions, of which our own case, *Billo* v. *Allegheny Steel Co.*, 328 Pa. 97, 195 A. 110, may fairly be said to be an example. *That case arose and was decided before the statute brought occupational diseases under the act.* The decision was that a plaintiff could sue in tort for silicosis; it was a disease not made the subject of the compensation legislation; no other result could have been reached. But neither that case, nor any that we have seen, would justify a construction of our statute in accord with plaintiff's contention. *We have examined the cases cited in plaintiff's brief and reject the statement that the weight of authority is against defendant's position.* The cases are simply not in point. There is one case, and so far as we have found, only one, in which the compensation statute deals with silicosis and distinguishes between partial and total disability; in that one the court concluded that the legislature dealt with the whole subject and held there could be no recovery outside the provisions of the act; it is a decision of Harris, J., in New York, *DelBusto* v. *Dupont DeNemours & Co., Inc.*, Sup. Ct. 1938, 167 Misc. 920, 5 N. Y. S. 2d 174. This case supports the view of the appellee." (Italics mine.)

The Supreme Court of New York, in the case of *DelBusto* v. *Dupont DeNemours & Co.*, supra, upheld the contention that the employee who was only partially disabled had no recourse at common law. The author of the opinion said at page 177 of 5 N. Y. S. 2d:

"This court is of the opinion that in enacting that portion of § 66, Article 4-a of the Workmen's Compensation Law (citing the statute) which provides, 'Compensation shall not be payable for partial disability due to silicosis or other dust diseases,' the legislature determined that in compelling the employee to bear the burden of partial disability it was a burden that he should in, accordance with the constitution, be compelled to bear in return for the compensation allowed him for total disability or death from silicosis or other disease. * * *"

This case is particularly interesting as it was rendered after the case of *Barrencotte* v. *Cocker Saw*, 266 N. Y. 139,

194 N. E. 61, which permitted an employee suffering from silicosis to maintain an action under his common law right of action. The development of the law in the state of New York was substantially as we indicate. Prior to 1935, the Workmen's Compensation Law made no provision for the payment of compensation for disability, partial or permanent, due to silicosis. In the *Barrencotte* case, supra, an action was brought to recover damages at common law for injuries due to silicosis sustained as a result of the employer's negligence. The court of appeals held that the New York legislature had intended to bar actions at common law only in the field within which it created liability or obligation to provide compensation for injury or disability, regardless of fault. Since silicosis was not scheduled as an occupational disease, the court of appeals held those who suffered were free to bring an action at common law. The following year the act was amended to include any and all occupational diseases. In 1936 silicosis was made the subject of a separate article, and in 1938 the *DelBusto* case was decided.

The *DelBusto* case seems to me to be on all fours with the present action, particularly in view of the development of the law in the state of New York. Admittedly, the Supreme Court of New York is not the court of last resort in that state, but other cases have attempted to have the court of appeals upset the ruling of the *DelBusto* case. As far as we have been able to determine, those attempts have not met with any success.

In the *Powers* v. *Porcelain Insulation Corporation* case, 285 N. Y. 54, 32 N. E. 2d 790, the Court of Appeals refused to pass on the constitutionality of the New York act because questions other than the validity of the challenged statute were presented. Again, in the *Scherini* v. *Titanium Alloy Co.* case, 286 N. Y. 531, 37 N. E. 2d 237, the Court of Appeals refused to upset the law on procedural grounds, although one justice wrote a dissenting opinion in which he asserted the act violated both the Constitution of the

State of New York and the 14th Amendment of the Constitution of the United States.

In 1946, the New York court in the case of *Soporito* v. *Hetzler Foundries, Inc.*, 269 App. Div. 962, 57 N. Y. S. 2d 838, again had occasion to deal with the New York act. In that case the employee claimed to have suffered injuries to his circulating and cardiac system because of having had to work in rooms polluted with gas and fumes. The complaint alleged that the plaintiff's injuries were not accidental injuries or occupational diseases such as to bring him within the coverage of the Workmen's Compensation Law. The Supreme Court denied a motion to dismiss the complaint based on the contention that plaintiff's sole remedy was by a proceeding under the Workmen's Compensation Law. The Court of Appeals affirmed the order of the Supreme Court. While the decision does not so indicate, the ruling is consistent with prior rulings of that court to the effect that if a disease is not scheduled, then the employee still has his right to pursue his common law remedy. Had our legislature not scheduled silicosis, then the authorities cited by appellant would be in point.

Counsel for appellant has cited many cases dealing with legislative intent in enacting both accidental injury and occupational disease statutes. Among the cited cases are the following: *Jones* v. *Rinehart & Dennis Co.*, 113 W. Va. 414, 168 S. E. 482; *Downing* v. *Oxweld Acetylene Co.*, 112 N. J. L. 25, 169 A. 709; *Gentry* v. *Swann Chemical Co.*, 234 Ala. 313, 174 So. 530; *Rosenfield* v. *Mathews*, 201 Minn. 113, 275 N. W. 698; *Triff* v. *National Bronze Co.* 135 Ohio St. 191, 20 N. E. 2d 232, 121 A. L. R. 1131; *Jellic Coal Co.* v. *Adkins*, 197 Ky. 684, 247 S. W. 972; *Donnelly* v. *Minneapolis Mfg. Co.*, 161 Minn. 240, 241, 201 N. W. 305; *Dalton Foundries Inc.* v. *Jefferies*, 114 Ind. App. 271, 51 N. E. 2d 13.

These cases can be divided into three general groups, and for the most part we agree with the conclusions reached. However, they are not in point. Some of the cases hold that when the legislature has not occupied the occupational disease field, the employee suffering from a disease con-

tracted or aggravated by the employer's negligence is not precluded from bringing his common law action. This is consistent with our holding in *Young* v. *Salt Lake City*, 97 Utah 123, 90 P. 2d 174. Another group holds that when the legislature enacts an occupational disease law it only occupies the field to the extent of the enumerated diseases. These cases would be in point, had silicosis not been enumerated in our act. The last of the three groups deals with the rights of employees to bring suits based on a right of action arising before enactment of the particular statute. Obviously when an act excludes causes of action arising before the act is passed, no valid reason exists for denying the employee his right of action for the injuries sustained before passage of the act.

We have concluded that the legislature occupied the complete field of silicosis and that under the facts alleged in this case, Section 42-1a-3 bars plaintiff from maintaining this action. We now consider the question of whether or not the act is unconstitutional because it fails to provide compensation for a partially disabled employee. The contention is made that if a partially disabled employee is not granted compensation and, further, is denied his common law right of action then he has been deprived of his remedy by due course of law for an injury done to his person, contrary to the provisions of the Constitution of this state. There are two provisions of our Constitution which have been interpreted in Workmen's Compensation litigation. Section 5, Article XVI, which involved the right to sue for wrongful death, is no longer involved so we are now only concerned with Section 11, Article I, which provides:

"All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, which shall be administered without denial or unnecessary delay; and no person shall be barred from prosecuting or defending before any tribunal in this State, by himself or counsel, any civil cause to which he is a party."

One of the first compensation acts tested for constitutionality was the New York act, enacted in 1910, Laws 1910,

c. 674. In *Ives* v. *South Buffalo Ry. Co.,* 201 N. Y. 271, 94 N. E. 431, 34 L. R. A., N. S., 162, Ann. Cas. 1912B, 156, the New York Court of Appeals struck down this act as being unconstitutional. Not until the year 1917, when the U. S. Supreme Court in the case of *New York Central R. R. Co.* v. *White,* 243 U. S. 188, 37 S. Ct. 247, 61 L. 1d. 667, L. R. A. 1917D, 1, Ann. Cas. 1917D, 629, held compulsory workmen's compensation act constitutional was the uncertainty removed. The basis for holding such acts constitutional is that the state under its police power has the right to require industry to make compensation for the damage which the industry itself causes.

The constitutionality of compensation acts is too well settled to be now questioned, and is referred to solely for the reason that this case involves a problem not usually presented in this type of case. Here we have a claim that the act, if construed to involve no compensation for partially disabled employees, is unconstitutional because it does not go far enough in providing remedies to injured employees. Had the act provided some measure of compensation for partial disability, then the claim of unconstitutionality could not have been raised, as the employee would have had a redress for the wrong.

It may be that by reference to objections raised to the constitutionality of the act and the answers to the objections, we can find reason for the right of the legislature to enlarge, limit, or abrogate the rights or remedies of injured employees.

It has always been contended by employers that the act offended the due process clause because it abolished certain defenses such as contributory negligence fellow servant, and assumption of risk, and by the employee because it abolished the common law right of action for negligence. The contention has been overruled because no one has a vested right in any rule of law. A statutory right can be taken away and it may vest the individual with a right as sacred and important as one existing under common law principles. Many states must have held that both statutory

rights and common law rights can be taken away, otherwise, there can be no question that acts which abolish actions for seduction, breach of promise, criminal conversation, and alienation of affections, would be unconstitutional.

Assuming the legislature can abolish the common law right of action for negligence, must it return a substitute right to each and every employee in some way affected by the abrogation to meet the test of constitutionality? If the legislature were to abolish all compensation ▮▮▮ and all common law rights for negligence of an employer, no contention could reasonably be made that it was a proper exercise of the police power. The reverse would be true and pauperism with its concomitants of vice and crime would flourish. However, if the main purpose of the act is to assess the costs of injury and disease against the industry, the welfare of the employee is improved and the act is constitutional. The fact that under the act certain of the employees are denied their common law right, and at the same time only given compensation conditioned upon reaching a stage of total disability, does not offend against the Constitution as certain individual rights and remedies can be made to yield to the public good. The humanitarian principles of the occupational disease act do overcome in part, the inadequacy of relief at common law for a class of employees, and the act should not be discarded because some members of the class have rights, which may be adversely affected.

It should be remembered that our act is a compulsory act and should be considered in the light of the principle that the employer is charged with liability regardless of fault, when the employee is totally disabled or deceased, and therefore need not also be subjected to ▮ the employee's common law right of action for negligence during the time the employee is partially disabled. This would, in effect, permit the employee to retain his common law right and then, upon reaching disablement, grant him an additional right. Such a rule would grant the employee two remedies for one wrong. If the legislature

can deny the right to rely on the defense of contributory negligence and assumption of risk, and make the employer absolutely liable regardless of fault, then we believe it also has the right to say that compensation shall not be awarded until the employee has brought himself within the terms of the statute.

There must have been some reason for the legislature to limit the compensation to those employees who are totally disabled and to the dependents of those who are deceased. We are not of the opinion that the legislature intended to deny compensation to partially disabled employees and to deny them enforcement of their common law right without reason or just cause. Neither are we of the opinion that the legislature intended to preserve their common law right when it was well aware of the abuses that had brought about occupational disease legislation and the confusion that would exist if the degree of disability controlled the forum. We are convinced the legislature, because of the nature of the disease, the length of time for development, the difficulty of proof, the inability to properly apportion the negligence between employers, the cost and expense of litigation and the small return to the employee, decided to deal with silicosis through the commission and to require both the employer and the employee to shoulder part of the costs of occupational disease without regard to the negligence of either. The employee to share the burden during partial disability, and the employer when disablement or death occurred.

This court cannot ignore or strike down an act because it is either wise or unwise. The wisdom or lack of wisdom is for the legislature to determine. If the act is unjust, amendments to correct the inequities should be made by the legislature and not by judicial interpretation. ■ Years of study and millions of dollars have been spent on research and study of silicosis, and the legislature is able to profit by these efforts when considering legislation on the subject. If after considering the reasons for and

against a bill, the legislature enacts it into law, arguments for correction of any claimed inequities should be addressed to the legislature where they can be considered and if found to exist, be corrected.

The judgment is affirmed, with costs.

McDONOUGH, C. J., and PRATT, J., concur.

WOLFE, Justice (concurring).

I concur with the opinion of Mr. Justice Latimer and in the reasons given therefor. In doing so, I am not unaware that it may visit a hardship on an employee who has had his strength and ability largely but not totally impaired by the negligence of an employer in failing to use modern technological methods for keeping down silicon dioxide dust, in that he must continue to drag himself to work until he can no longer work at all. And in saying this, I have in mind a hypothetical case. We have no evidence of what the conditions were in the plant of the defendant. For aught we know they may have been as perfect as science and invention could make them.

As the prevailing opinion points out, this disease is a slowly progressive one. If our Occupational Disease Disability Law left open to the courts a cause of action for partial disability due to an occupational disease named in the schedule, could the plaintiff return again or perhaps again and again and recover for successive increments of disability due to the conditions under which he worked? It would seem as is pointed out in the prevailing opinion that had the legislature wanted to provide for successive increments of disability short of total disability, common sense would have caused it to place such recourse in the Industrial Commission where the applicant's progress could be watched and registered from time to time rather than in courts of law (and there might be invoked the jurisdiction of several courts in one progressive case) not practically equipped for such business. I am impressed with the fact that from a standpoint of common sense and practica-

bility alone, the legislature must have intended to make the Industrial Commission the sole tribunal for the handling of occupational diseases.

I do not understand that Article I, Sec. 11, of the Constitution of Utah, prohibits the modification or even the entire removal or destruction of a common law right by legislative enactment. There is still such a thing as damnum absque injuria. I need express no opinion as to those injuries based on rights respecting person, property or reputation which under the pressure of the growth of the enlightened conscience of mankind have become a part of the common law. Much of what was said in the concurring opinion in the case of *McGrew* v. *Ind. Comm.*, 96 Utah 203, 85 P. 2d 608, in respect to the motivating force of that factor as to social legislation has application to the common law. And I think this process is still operating. I see no reason why the common law which recognized rights, duties and liabilities to meet the conditions of a certain period may not later recede from those or modify them if the needs of the people require that. Naturally most departures from the common law, especially if marked, will be made by the legislature, but judicial legislation (and such it is regardless of what jurisprudencial terminology may be employed) fills the interstices in a more graduale process. I must agree with Mr. Justice Wade that the legislative intent as expressed by the constitutional and statutory provisions and the surrounding facts and circumstances must always be the determining factor in this question. But I agree with Mr. Justice Latimer that by such test the legislature did intend in this case to abolish any right to recover at the common law for partial or total disability due to silicosis resulting from negligence of the employer. I do not think the intent to abolish the common law right must be shown by a specific statutory provision, nor do I think that every element of damage, such as pain and suffering, as they existed in the common law, must be specifically abolished or else considered as having been preserved. Where the scheme enacted by the legislature is of such a nature as to make highly

incongruous and impracticable certain other asserted additional or piece-meal remedies, there may be inferred an intent by the legislature to abolish them.

If the situation is such that the claimed common law right when placed against the provisions of the act is shown to be untenable, and resort to different tribunals would introduce such confusion, uncertainty, incongruity and impracticality of remedy and of the operation and administration of the act that it must be inferred that the legislature intended to make the substituted rights to compensation the sole rights and the substituted tribunal the sole tribunal for resort, then the inference is tantamount to a specific provision. *Union Portland Cement Co.* v. *State Tax Commission,* 110 Utah 135, 170 P. 2d 164, on rehearing, 110 Utah 152, 176 P. 2d 879.

WADE, Justice (dissenting).

I dissent.

The facts and issues are largely as stated in the prevailing opinion. However, I call attention to the fact that there is no contention that under the facts alleged plaintiff could not recover his damages for defendants' negligence in a common law action if he is not precluded therefrom under the exclusive remedy provision of the occupational disease act, nor is there any claim that he is entitled to recover compensation under that act. The parties agree that if plaintiff were entitled to recover under the occupational disease act that would be his exclusive remedy. Thus the only question presented as far as the corporate defendant is concerned is: Does the occupational disease act preclude plaintiff from recovering damages in a common law action under the facts alleged where no compensation is provided therein for the injuries which he has sustained?

The overwhelming weight of authority in occupational disease and workmen's compensation cases is that the remedy provided in such acts is the exclusive remedy only in cases where compensation is provided for thereunder. Such acts

do not preclude an employee from recovering damages caused by the negligence of his employer in a common law action in cases where no compensation is provided for the injury sustained by the employee under the act. *Mably & Co.* v. *Lee,* 1934, 129 Ohio St. 69, 193 N. E. 745, 100 A. L. R. 511, and annotation at page 519; *Jones* v. *Rinehart,* 1933, 113 W. Va. 414, 168 S. E. 482; *Triff* v. *National B. & A. F. Co.,* 1939, 135 Ohio State 191, 20 N. E. 2d 232, 121 A. L. R. 1131, annotation at page 1143. The first Ohio case above cited held contrary to the weight of authority but was reversed in the second one. In accord with the weight of authority as to the workmen's compensation act is *Young* v. *Salt Lake City,* 1939, 97 Utah 123, 90 P. 2d 174. This case will be discussed later.

The fact that the weight of authority is that way is not conclusive on that question. The law of each state is based on a different statute, and some states have constitutional provisions thereon. While these statutes of the various states, in a general sense, were enacted to accomplish the same purpose and cover about the same subject matter there is little uniformity in their wording. So the decision of one state under its statutory and constitutional provisions may have little bearing on this question under the different provisions in another state. In some states the provisions of the workmen's compensation act are so different from those of the occupational disease act that a different result may be required. The legislative intent as expressed by the constitutional and statutory provisions and the surrounding facts and circumstances must always be the determining factor on this question. In determining such intent courts must take into consideration the purpose of the act and the public policy as expressed by the statutory and constitutional provisions and the surrounding facts and circumstances. See Annotation in 100 A. L. R. 519, and cases therein cited.

In construing the statute it must be kept in mind that under the common law system there is firmly established a strong public policy based on justice and equal rights to all,

that there shall be no wrong without a remedy therefor. That such policy is not satisfied by granting compensation to a larger class of persons who could not recover for injuries sustained under the common law, but depriving others who could have recovered at common law of both compenssation and their right to recover at common law. Such policy is so firmly entrenched in our system that the courts will not construe a statute as being contrary thereto unless required to do so by the clear and unambiguous provisions thereof and that in determining the public policy of the state as established by a legislative enactment the courts will keep in mind this just and equitable policy and will not construe a statute as establishing a contrary one unless the legislative enactment so provides in unmistakable terms. So under the workmen's compensation and occupational disease statutes the courts have universally refused to construe a statute so as to deprive an employee, who is injured through the negligence of his employer, of his common law right to recover damages in cases where no compensation for his injuries are provided except where the statute is clear and unmistakable that such was the policy and intention of the legislature.

In *Downing* v. *Oxweld Acetylene Co.,* 1933, 112 N. J. L. 25, 169 A. 709, at page 712 affirmed 113 N. J. L. 399, 174 A. 900, the court said:

"* * * It is not to be presumed that the Legislature intended to deprive the injured workman of his common-law remedy, in the event that he suffered, as a result of the negligence of his employer, an occupational disease not specified in the Compensation Act. Such an intention must be expressed in clear and unequivocal language. The term 'compensation' should not be construed to embrace damages recoverable for breach of a common-law duty, unless that legislative purpose is indubitably expressed."

In *Jones* v. *Rinehart,* 1933, 113 W. Va. 414, 168 S. E. 482, in 113 W. Va. at page 425, page 487 of 168 S. E. it was said:

"* * * It must not be deemed that such right of action is taken from employees unless the statutory language is clear and concise

and not subject to any other reasonable construction. It is difficult to perceive a satisfactory and reasonable basis for exemption of employers from liability for disease caused by their negligence, such disease being non-compensable under the compensation statute."

In *Gentry* v. *Swann Chemical Co.*, 234 Ala. 313, 174 So. 530, at page 534 speaking of this subject the court said:

"However, in the light of the provisions of section 13 of the Constitution of 1901, 'That all courts shall be open; that every person, for any *injury* done him, in his lands, goods, *person*, or reputation, shall have a remedy by due process of law' it cannot be said that for an injury done a person, not within the provisions of the Workmen's Compensation Act, that it was the legislative intent by the enactment of said law, to deny such person a remedy, * * *."

Section 11, Article I, of the Constitution of Utah, is similar to that quoted by the Alabama court and therefore should be taken into consideration in determining the legislative intention.

In *Rosenfield* v. *Matthews*, 102 Minn. 113, 275 N. W. 698, on page 699, the court said:

"* * * The general rule is that: 'Where an injury does not fall within the workmen's compensation act, the common-law remedy is not affected by it. * * *' 71 C. J. page 1484, § 1493. Our own cases are in accord and so hold. In *Donnelly* v. *Minneapolis Mfg. Co.*, 161 Minn. 240, 243, 245, 201 N. W. 305, 306, the court said: 'The statute is a substitute for the common law on the subject which it covers and so far as it goes. But it does not affect rights and wrongs not within its purview or which by implication or express negation are excluded. * * * Courts are not permitted by construction to carry a statute, particularly one in derogation of the common law, beyond its clearly defined scope. It is for the Legislature to limit or extend the operation of its enactments, and even though there are no self-contained limitations, it would be judicial legislation to extend a statute beyond its subject-matter. That is a general rule which would be violated if we were to hold otherwise than we do. But there is a more particular rule equally applicable. It is 'that an existing common-law remedy is not to be taken away by a statute, unless by direct enactment or necessary implication.' *King* v. *Viscoloid Co.*, 219 Mass. 420, 106 N. E. 988, Ann. Cas. 1916D, 1170."

In *Triff* v. *National Bronze Aluminum Foundry Co.*, 135 Ohio St. 191, 20 N. E. 2d 232, 238, 121 A. L. R. 1131, the court said:

"The controlling principles of construction may be summarized thus: At the time workmen's compensation was first adopted in Ohio an action for occupational disease or for wrongful death therefrom could be maintained against the employer guilty of actionable negligence. There has never been any statutory or constitutional provision expressly denying the right to maintain an action growing out of a noncompensable occupational disease. The language to be construed is general in character; and the letter should not prevail over the spirit for the polestar of interpretation is the intent of the provisions.

"Since the underlying purpose of compensation is to make industry bear the burden of human wreckage by paying stated awards for injury and loss of life in the course of employment, the court should avoid a strained construction which would leave many employees, who are blameless victims of their employer's torts without either damage or compensation and absolutely remediless. It is an obvious injustice to allow some employees who contract occupational disease compensation and others nothing—not even damages tortiously inflicted.

"The true objective of compensation could hardly be attained by giving the language a meaning that would work injustice when another course lies open consistent with the spirit manifested in all the constitutional and statutory provisions when considered together. By giving the words of the organic and statutory law their ordinary meaning and keeping in mind the purpose sought, the conclusion is inevitable that the right of action growing out of a non-compensable occupational disease still subsists."

In view of Section 88-2-2 of our statutes we do not adhere to the common law rule suggested by the Minneapolis court as a ground for the rule which it laid down, that statutes in derogation of the common law are to be strictly construed. But the rule of construction announced in the above cases is equally as applicable to our statute under the rule of construction required by the above section as it would be under the common law rule. That section requires that our statutory provisions

"are to be liberally construed with a view to effect the objects of the statutes and to promote justice."

Before we can liberally construe a statute to effect its objects we must first determine what its objects are, in any event, we are enjoined to construe the statute so as to promote justice. In the above quotation the Ohio court said:

"* * * the underlying purpose of compensation is to make industry bear the burden of human wreckage by paying stated awards for injury and loss of life in the course of employment, the court should avoid a strained construction which would leave many employees, who are blameless victims of their employer's torts, without either damage or compensation and absolutely remediless."

It would be an obvious injustice to those who are left remediless to so construe the statute. Section 88-2-2 requires us to construe the statute so as to promote justice unless the statute clearly expresses an intention to the contrary. On this question the comment of the Kentucky court in *Jellico Coal Co.* v. *Adkins*, 197 Ky. 684, 247 S. W. 972, 974, is of interest where it is said:

"The next question is: Is the act exclusive as to diseases not covered by it, or as to these has the injured party a remedy at common law? Much has been written in eulogy of these acts. We have been reminded of the difficulties that the employee encountered at common law in a suit to recover damages for negligence. It has been said that he first had to show negligence on the part of the employer. If he succeeded in that he was handicapped by the doctrine of assumed risk, fellow servants, and contributory negligence, and in the majority of cases was barred of recovery; that under the benevolent influence of these acts he surrendered his claim for pain and suffering and disfigurement, and in return the old common-law doctrine of assumed risk, fellow servants, negligence, and contributory negligence were all abolished, and the employee is now insured a safe, certain, and speedy compensation. It is further claimed that they relieved the employer from the expense and uncertainty of long and vexatious litigation, fix the compensation of the injured one as an item in the expense of the business to be borne in the same way as is the replacement of damaged machinery.

"In other words, by the act the subtle refinements and distinctions of the common law are swept aside, and a remedy is found for all the ills incidental to industrial casualties. We are not dissenting from this, nor are we assenting to it, but we venture to suggest, that if such was the humane purpose of the Legislature, it could hardly have intended as a part of the same act to deny all remedy and all recovery

to the employees of this commonwealth who contracted diseases through the negligence of their employers, except as to such as have received traumatic injuries  *  *  *"

This rule, that the court will not construe the statute so as to cut off all common law remedy in cases where no compensation is provided under the statute, except in cases where it is clear that such was the intention of the legislature, is the rule which runs through all the cases. In the cases where it is held that the common law remedy is not available to the employee even though he has suffered a non-compensable injury accept the above rule but conclude that it is clear that such was the legislative intention. It is true that different courts might reach a different result if they were construing the same statute, but they would all use about the same tests in reaching the result. The question of whether the intention of the legislature is clearly shown is largely a question of opinion. Different courts have different opinions.

I will examine our statutes to determine what the legislative intention was:

References to statutes unless otherwise stated are to U. C. A. 1943.

Section 42-1a-3 provides:

"The right to recover compensation pursuant to the provisions of this act for diseases or injuries to health sustained by an employee and arising out of or in the course of his employment, whether resulting in death or not, shall be the exclusive remedy against the employer."

Section 42-1a-12 provides:

"The following terms as used in this act shall be construed as follows:

"(a) 'Disablement' means that the event of becoming physically incapacitated by reason of an occupational disease as defined in this act from performing any work for remuneration or profit. Silicosis, as defined in this act, when complicated by active pulmonary tuberculosis, shall be presumed to be total disablement. 'Disability,' 'disabled,' 'total disability' or 'totally disabled' shall be synonymous with 'disablement.'

"(b) 'Compensation' shall mean the payments and benefits provided for in this act."

## Section 42-1a-29 provides:

"For the purpose of this act 'silicosis' is defined as a chronic disease of the lungs caused by the prolonged inhalation of silicon dioxide dust (SiO2) characterized by small discrete nodules of fibrous tissue similarly disseminated throughout both lungs, causing a characteristic X-ray pattern, and by variable clinical manifestations."

## Section 42-1a-13 provides:

"(a) There is imposed upon every employer a liability for the payment of compensation to every employee who becomes totally disabled by reason of an occupational disease subject to the following conditions:

\* \* \* \* \*

"(2) No compensation shall be paid for a disease other than silicosis unless total disability results within one hundred twenty days from the last day upon which the employee actually worked for the employer against whom compensation is claimed.

"(3) No compensation shall be paid in case of silicosis unless during the ten years immediately preceding the disablement the injured employee shall have been exposed to harmful quantities of silicon dioxide (SiO2) dust for a total period of not less than five years in this state and unless total disability results within two years from the last day upon which the employee actually worked for the employer against whom compensation is claimed.

\* \* \* \* \*

"(b) There is imposed upon every employer a liability for the payment of compensation to the dependents of every employee in cases where death results from an occupational disease, subject to the following conditions:

\* \* \* \* \*

"(2) No compensation shall be paid for death from silicosis unless during the ten years immediately preceding the disablement the deceased employee shall have been exposed to harmful quantities of silicon dioxide (SiO2) dust for a total period of not less than five years in this state.

"(3) No compensation shall be paid for death from silicosis unless the death results within two years from the last day upon which the employee actually worked for the employer against whom compensation is claimed, except in those cases where death results during a period of continuous total disability from silicosis for which compensation has been paid or awarded, and in such cases compensation shall be

paid if such death results within five years from the last day upon which the employee actually worked for the employer against whom compensation is claimed.

"(4) No compensation shall be paid for death from an occupational disease other than silicosis unless death results within one year from the last day upon which the employee actually worked for the employer against whom compensation is claimed, except in those cases where death results during a period of continuous total disability from an occupational disease other than silicosis for which compensation has been paid or awarded, and in such cases compensation shall be paid if such death results within three years from the last day upon which the employee actually worked for the employer against whom compensation is claimed."

The prevailing opinion does not even attempt to analyze or notice the wording of Section 42-1a-3, the exclusive remedy provision although counsel for plaintiff argued that question at length. In my opinion that section throws great light on the question of the legislative intention and I shall review the argument of the parties and analyze its meaning.

Counsel for plaintiff argue that in construing that section, the use of the term "pursuant to the provisions of this act" indicates that it is only in cases where the right to recover compensation is provided for pursuant to the provisions of this act that such right shall be the exclusive remedy against the employer, and that in all other cases the employee may pursue his common law remedy the same as though this section had not been enacted. They urge that there could be no other purpose in placing that provision in this section of the statute because otherwise it adds nothing whatever to the meaning of that section. If the purpose of that provision was merely to make certain that the "right to recover compensation" means the right to recover such compensation as is provided for pursuant to the provisions of this act, then it is perfectly clear that such was the meaning of that term without adding the term "pursuant to the provisions of this act"; this is particularly true since Section 42-1a-12, expressly provides that the term "compensation" as used in this act shall be construed

to mean "the payments and benefits provided for in this act." They argue that since in construing a statute, where possible, meaning should be given to every word, phrase and part thereof, we should not construe this section so that this provision adds nothing to the meaning of the statute. This argument would have considerable weight were it not for the fact that if we give to that term the meaning plaintiff's counsel would give it, the next provision,

"for diseases [and] injuries to health sustained by an employee and arising out of or in the course of his employment,"

adds nothing to the meaning of this section because if the first provision makes the right to recover compensation the exclusive remedy only in cases where compensation is provided for pursuant to the provisions of this act, then such right is limited by Sections 42-1a-13 and 14 to the full extent of and far beyond requirements of the last quoted provision and such provision would add nothing to the meaning of this section.

On the other hand defendants' counsel rather ingeniously argue that in Section 42-1a-3,

"the words 'the exclusive remedy against the employer,' 'for diseases or injuries to health' * * * 'shall be pursuant to the provisions of this act,' are so clear in their meaning that this court must refrain from indulging in any construction thereof."

While objecting to the court indulging in any construction of this statute they do find it necessary to point out their construction that the word "diseases" plainly means "all diseases," and apparently they found it necessary to re-arrange and slightly misquote the provisions of the statute in order to make sure that the court would understand their construction thereof. If the statute were as clear in its meaning as they contend, this would not be necessary. If the statute were arranged and said what they purport to quote it as saying, there would be much force to their argument but the last purported quotation therefrom, "shall be pursuant to the provisions of this Act" is not in the statute.

The words *"shall be* the exclusive remedy against the employer" are there and the words "the right to recover compensation *pursuant to the provisions of this act"* are in another part thereof but the italicized words which constitute the purported quotation, are not placed together and do not give the same meaning as they do in the purported quotation.

The legislature said:

"The right to recover compensation pursuant to the provisions of this act for diseases or injuries to health * * * shall be the exclusive remedy against the employer."

Counsel would have it say:

"The exclusive remedy against the employer for diseases or injuries to health * * * shall be pursuant to the provisions of this act."

These two versions do not say the same thing. In the first place the term "pursuant to the provisions of this act" merely modifies, explains or limits the conditions under which the right to recover compensation shall be the exclusive remedy. In the second case the term "the right to recover compensation" which is the subject of the sentence in the statute is entirely omitted, and it is provided that the exclusive remedy shall be pursuant to the provisions of this act. There would have been little difference in the meaning had they merely reversed the order of these two provisions and instead of saying as the statute does:

"The right to recover compensation * * * shall be the exclusive remedy * * *"

they had said:

"The exclusive remedy shall be the right to recover compensation."

But counsel in their construction do not merely do that, they entirely omit the term

"the right to recover compensation"

which was the subject of the sentence as the legislature enacted it, reverse its order and substitute for the omitted term the words

"pursuant to the provisions of this act"

which in the statute were not the subject of the sentence but merely a modifier thereof, that is, they explained or limited the meaning of the subject of the sentence. In so doing they try to make the statute say in effect:

"The exclusive remedy shall be pursuant to the provisions of this act."

If we were again to reverse the provisions of this sentence and still omit the subject of the sentence we would get:

"Pursuant to the provisions of this act shall be the exclusive remedy."

Which would mean nothing. This illustrates what can be done by rearranging and omitting words as counsel have done with this sentence.

In this statute the words

"the right to recover compensation pursuant to the provisions of this act"

are placed at the beginning of the sentence and in that order. The term

"the right to recover compensation"

is the subject of the sentence and is followed immediately by

"pursuant to the provisions of this act"

which clearly indicates that the second provision was intended to modify, that is, explain or limit the meaning or the application of the first provision. As enacted the statute does not completely spell out or make clear the exact meaning or purpose of the term

"pursuant to the provisions of this act"

it may signify either one of two different meanings or both of them. The purpose and meaning of the provision may have been to merely identify and limit

"the right to recover compensation"

to such compensation as may be recovered under that act. Or the purpose and meaning of that provision may have been to limit the application of

"the right to recover compensation"

to cases where compensation is provided for under this act. If the object and meaning was to merely identfy

"the right to recover compensation"

as the compensation recoverable under the act, while the meaning would be slightly different from that placed thereon by defendants, it would sustain their position. The statute under that construction if its full meaning were clearly spelled out would read:

"The right to recover *the* compensation *which is provided for* pursuant to the provisions of this act for *all* diseases or injuries to health sustained by an employee and arising out of or in the course of his employment, whether resulting in death or not, shall be the exclusive remedy against the employer."

As previously pointed out under such construction the words

"pursuant to the provisions of this act"

adds no meaning whatever to this statute. Because it is clear without those words that the word "compensation" could mean only the compensation which could be recovered under this act. Any possible doubt on this question is removed by Section 42-1a-12, which defines the word "compensation" as used in this act to mean

"the payments and benefits provided for in this act."

This argument has some weight notwithstanding the fact that under the other construction the next provision of the statute adds nothing to its meaning.

As above noted defendants found it necessary to point out their construction that the word "diseases" clearly means "all diseases." However, it would have been much more clear that such was the legislative intention had the word "all" been placed in the statute so that it would read:

"The right to recover compensation for *all* diseases and injuries to health sustained by an employee and arising out of or in the course of his employment shall be the exclusive remedy against the employer."

Had the statute so read it would have rather definitely indicated the legislative intention to make the right to recover compensation the exclusive remedy against the employer in *all* such cases. The fact that this word was omitted very materially weakens defendants' contention that the statute is clear and not subject to construction, and harmonizes it with plaintiff's contention.

If the meaning and purpose of the words

"pursuant to the provisions of this act"

was to limit the application of the exclusive remedy provision to cases where compensation is provided for under the act this statute if its full meaning were clearly spelled out would read:

"The right to recover compensation *where compensation is provided for* pursuant to the provisions of this act for diseases or injuries to health sustained by an employee and arising out of or in the course of his employment, whether resulting in death or not, shall be the exclusive remedy against the employer."

Under this construction the right to recover compensation is made the exclusive remedy only in cases where compensation is provided for under the act, in all other cases the employee may pursue his remedy at common law the same as though this law had not been enacted. The term "exclusive remedy" indicates that the party has been given a

remedy which precludes him from all other remedies. It negatives the idea that there are cases where no compensation is provided for but the employee is still precluded from pursuing his common law remedy which he would have had were it not for this act. If we speak of a court as having "exclusive jurisdiction" in a case we mean not only that other courts do not have jurisdiction of the case but also that the court in question does have jurisdiction thereof. So when the legislature used the term "exclusive remedy" it indicated thereby an intention to preclude an employee from his common law remedy only in cases where the right to recover compensation is granted pursuant to the provisions of the act.

The exclusive remedy provision of the California statute which ours was probably patterned after, makes it clear that the words "exclusive remedy" were intended to have the meaning above suggested, as do the codes of other western states. California Labor Code, Section 3601; Idaho Code, Section 43-1003; Iowa Code 1939, section 1380.

The prevailing opinion, contrary to defendants' contention, admits that the statute is ambiguous and requires construction. It, however, holds as defendants' counsel contends, that the bench and bar of this state have for many years assumed that an employee has no common law right of action for accidental injuries suffered in the course of his employment against his employer, even though no compensation was provided for such accident under the act. How any one knows what has been assumed by the bench and bar does not appear either from the briefs or the prevailing opinion. No case has been decided in this court which has passed on that question except possibly *Young* v. *Salt Lake City*, supra, which decided it the other way. If it were true, is this court bound by such an assumption on the part of the bench and bar? In the case of *Gray Realty Co.* v. *Robinson*, 111 Utah 521, 184 P. 237, the majority of this court did not think so.

It is further asserted in the prevailing opinion that this court has repeatedly construed the Workmen's Compensa-

tion Act in accordance with the claimed assumption, and that since the provisions of the Occupational Disease Compensation Act uses wording similar to the previous act it must be construed to have the same meaning. Of course the answer to that is that this court has never, except in the *Young, case,* supra, had this question presented to it and has never passed on that question under either of those acts. It is true that this court has repeatedly held that where compensation is provided for an accidental injury under the act, the recovery of such compensation is the exclusive remedy of the employee against the employer. But there is no case decided by this court which has gone farther than that. That is the holding in all the cases cited and quoted from in the prevailing opinion which were decided by this court, and none of them are in point nor do they throw any light on the problem presented here. Only three Utah cases require our consideration.

In *Murray* v. *Wasatch Grading Co.,* 73 Utah 430, 274 P. 940, the plaintiff was awarded damages in a common law action for injuries sustained as the result of defendant's negligence. He claimed that at the time of the accident he was not an employee of the defendant. On appeal we held from the evidence that he was an employee of the defendant at that time and that he suffered accidental injury in the course of such employment and was entitled to recover compensation therefor, and that the right to recover such compensation was his exclusive remedy, and he could not maintain his action for damages. This case comes squarely within the construction of this statute which I contend for.

*Ætna Life Insurance Co.* v. *Industrial Commission,* 64 Utah 415, 231 P. 442, was a contest between Ætna Life Insurance Company and Travelers Insurance Company, as to which one was liable to pay the compensation which had been awarded to an employe of Westinghouse Electric & Manufacturing Company. In May, 1923, the employee suffered pain from a strain in the course of his employment. At that time Ætna was furnishing the employer's compensation liability. In February of 1924, the employee again

strained himself in the course of his employment from which a hernia developed and he was awarded compensation therefor. At that time Travelers was furnishing the employer's compensation liability. We held that the strain suffered in May did not cause the hernia or any disability and therefore was not compensable, but that the hernia and disability for which compensation was awarded was caused by the strain in February and therefore Travelers and not Ætna was liable to pay the award. While in the course of the opinion it was said that pain without disability was not compensable, the employee did not ask for damages in a common law action, and we did not discuss or pass on whether he was entitled to recover such damages.

The prevailing opinion cites *Hyett* v. *Northwestern Hospital*, 147 Minn. 413, 180 N. W. 552, claiming that it holds that an employee

"could not maintain an action for injuries for which no compensation was provided."

In that case the injured employee received compensation for the accident which caused the injury. Then he brought a common law action to recover additional damages because the accident caused him to become impotent which was an element of damages not covered by the compensation act, because it did not cause any disability. The court merely held that where compensation for the accident in question was provided, it was the exclusive remedy even though it did not provide compensation for all the elements of damages which he suffered. In *Alaska Packers Assn.* v. *Ind. Acc. Com.*, 200 Cal. 579, 253 P. 926, the employee applied for and recovered compensation for his injuries, the case does not remotely suggest the problem here presented.

The only case where this court has passed on the question of whether an employee may recover in a common law action for negligence of his employer in a case where compensation is not recoverable under the Workmen's Compensation Act is *Young* v. *Salt Lake City,* supra. In that case Bailey was employed by the city to paint trucks with a

spray gun, from which he contracted lead poisoning which caused his death. His mother, a Mrs. Young who was his heir and only dependent, after being denied compensation by the Industrial Commission, brought an action to recover damages for his death which she alleged was caused by the negligence of the city. The trial court sustained a demurrer to her complaint on the grounds that such action was barred by Section 42-1-57, which contains the exclusive remedy provisions of the Workmen's Compensation Act. We held that his death was caused by an occupational disease which is not an accidental injury, and since plaintiff was not entitled to recover compensation under that act, her common law action to recover damages caused by the employer's negligence was not barred. While the court quoted the exclusive remedy section of that act in full, it does not analyze it or discuss its meaning. It apparently assumed that its meaning is clear and in accord with plaintiff's contentions here. The wording of the exclusive remedy sections of the Workmen's Compensation Act and the Occupational Disease Act which was later enacted are quite similar. Since the legislature enacted the occupational disease act, after the decision in the *Young* case was rendered, the legislature must have thereby adopted the construction placed on the similar provision of the Workmen's Compensation Act by this court.

Section 42-1-57 which contains the exclusive remedy provision of the Workmen's Compensation Act provides:

"The right to recover compensation pursuant to the provisions of this title *for injuries sustained by an employee,* whether resulting in death or not, shall be the exclusive remedy against the employer, * * *." (Emphasis ours.)

Under defendants' contention this must be construed to mean:

"The exclusive remedy against the employer for *all* injuries sustained by an employee shall be pursuant to the provisions of this act."

Or, as previously pointed out, what would be more tenable:

"The right to recover compensation for *all* injuries sustained by an employee shall be the exclusive remedy against the employer."

I have added the italicized word "all" because defendants insist that the similar phrase in the occupational disease act plainly means

"all disease or injuries to health sustained by an employee."

If this statute had been thus construed in the *Young* case, the court would have been compelled to reach the opposite conclusion. For if the right to recover compensation is the only remedy against the employer for *all injuries sustained by an employee,* then the plaintiff in that case would have been precluded from maintaining her common law action against the city. Clearly the employee's death caused by lead poisoning was an injury sustained by him. Not an accidental injury it is true, but this section does not say "for accidental injuries," it merely says "for injuries sustained by an employee." Section 42-1-43, expressly limits the right to recover compensation to an employee who is injured

"by accident arising out of or in the course of his employment."

But Section 42-1-57 placed no such limitation on this phrase in making the right to recover compensation the exclusive remedy against the employer "for injuries sustained by an employee." And neither by statutory definition nor by judicial construction has such limitation ever been placed on that provision. So to be consistent with plaintiff's contentions here we would have to construe that statute as meaning that for all injuries sustained by an employee the right to receive compensation shall be the exclusive remedy against the employer. Such construction is contrary to our decision in the *Young* case and cannot be harmonized therewith.

The decision in the *Young* case can only be sustained by construing the exclusive remedy provision of Section 42-1-57

to mean that the right to recover compensation only where compensation is provided for under that act shall be the exclusive remedy against the employer. By our holding in that case that plaintiff was not barred from her common law remedy since no compensation was provided for occupational diseases, we of necessity must have so construed that statute. The fact that the opinion contains no discussion of the meaning of the statute indicates that the court considered it clear that such was its meaning. Since Section 42-1-57 was so construed prior to the enactment of Section 42-1a-3, the legislature in using practically the same language must be presumed to have adopted the construction which this court had previously placed thereon.

The prevailing opinion cites *Del Busto* v. *E. L. Dupont deNemours & Co.*, 167 Misc. 920, 5 N. Y. S. 2d 174, affirmed 259 App. Div. 1070, 21 N. Y. S. 2d 417, appeal denied 284 N. Y. 817, 29 N. E. 2d 975; and *Moffett* v. *Harbison-Walker Refractories Co.*, 339 Pa. 112, 14 A. 2d 111, claiming that they support its position. The statutes involved in those cases are so clear that there is hardly room for any argument on the question. The New York statute expressly provided that:

"The liability of the employer prescribed by this article shall be *exclusive and in the place of any other liability whatsoever, at common law or otherwise, to such employee* * * * on account *of any injury disability, or death, caused by the inhalation of harmful dust* * * *." (Emphasis added.) Workmen's Compensation Law, Consol. Laws, c. 67, § 72.

In the face of that statute which is clear and concise and definite on the point here in question there does not seem to be any ground for any argument whatsoever on the legislative intent. The Pennsylvania statute although not quite so clear when taken with the surrounding circumstances is ample to justify the conclusion reached. These cases are distinguishable from our case on that ground.

In the following cases, all of them, in my opinion, construing statutes much stronger in favor of the employer, the courts have reached the same conclusion that I have

reached in this case. *Donnelly* v. *Minneapolis Mfg. Co.*, 161 Minn. 240, 201 N. W. 305; *Downing* v. *Oxweld Acetylene Co.*, 112 N. J. L. 25, 169 A. 709, affirmed 113 N. J. L. 339, 174 A. 900; *Szalkowski* v. *Osborne & Co.*, 9 N. J. Misc. 538, 154 A. 611; *Triff* v. *National Bronze & Aluminum Foundry Co.*, 135 Ohio St. 191, 20 N. E. 2d 232, 121 A. L. R. 1131.

The case of *Triff* v. *National Bronze & Aluminum Foundry Co.*, supra, cannot be distinguished in principle from the case at bar. In many respects it indicates much more strongly an intention to abrogate the employee's right to maintain a common law action for damages than does our act. Yet it holds squarely that neither the Ohio statute nor its constitutional provisions deprives the employee of his common law right of action growing out of occupational disease in cases in which the disease or sickness which he contracts was not made compensable. The legislature in that state first adopted its Workmen's Compensation Laws in 1911, and a constitutional provision thereon in 1912. In 1921, occupational diseases were first made compensable and a constitutional amendment was adopted thereon in 1923, but silicosis was not included in the schedule of such diseases until 1937. The action in question arose under the 1921 statute and the 1923 constitutional provision after occupational diseases had been made compensable but before silicosis had been included within the occupational disease schedule and about the same limitations on the right to recover compensation for silicosis were contained in their statute as is contained in our statute. In a dissenting opinion the difficulties in administrating such a law on which the majority of this court so strongly relies in our case was pointed out but even in the face of such argument the majority of the court refused to hold that such difficulties coupled with the other facts and circumstances were sufficient to indicate an intention to deprive the employee of his common law right of action in cases where no compensation was provided for under the circumstances in which it was contracted.

The wording of the Ohio statute and the constitutional provision indicate much more clearly an intention to abrogate the employee's common law right of action than does our statute. Those provisions are as follows [135 Ohio St. 191, 20 N. E. 2d 236]:

"Section 35, Article II of the Constitution of Ohio, as amended in 1923 and still in force, contains this provision: 'For the purpose of providing compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen's employment, laws may be passed establishing a state fund to be created by compulsory contribution thereto by employers, and administered by the state, determining the terms and conditions upon which payment shall be made therefrom. Such compensation shall be in lieu of all other other rights to compensation, or damages, for such death, injuries, or occupational disease, and any employer who pays the premium or compensation provided by law, passed in accordance herewith, shall not be liable to respond in damages at common law or by statute for such death, injuries or occupational disease * * *'

\* \* \* \* \*

"In Ohio there is in addition to the constitutional provision a statute, Section 1465-70, General Code, which reads as follows: 'Employers who comply with the provisions of the last preceding section' (§ 1465-69 General Code) shall not be liable to respond in damages at common law or by statute, save as hereinafter provided, for injury or death of any employe, wherever occurring, during the period covered by such premium so paid into the state insurance fund, or during the interval of time in which such employer is permitted to pay such compensation direct to his injured or the dependents of his killed employes as herein provided.'"

In reaching this decision the Ohio court expressly overruled two previous decisions, *Zajachuck* v. *Willard Storage Battery Co.*, 106 Ohio St. 538, 140 N. E. 405, which was very similar to our case of *Young* v. *Salt Lake City*, supra, in which that court had held contrary to our holding in the *Young* case, that their Workmen's Compensation Act, before occupational diseases had been included therein, had abrogated the employee's common law right to recover for lead poisoning contracted in the course of his employment as the result of his employer's negligence; and *Mabley* v. *Lee*, 129 Ohio St. 69, 193 N. E. 745, 100 A. L. R. 511, wherein under the very acts which the court was then construing

that court had previously held the other way. In addition thereto when the Ohio constitutional provision was adopted, in presenting it to the voters, a statement of a joint committee of employers and employees was issued wherein it was stated that the amendment

"wipes out the 'open liability'—giving recourse only to the compensation law for injuries or death arising out of and in the course of the employment."

And yet the court in the *Triff* case held that those provisions only wiped out open liability in cases where compensation had been provided for the very disease which the employee contracted.

If the majority of this court has by this decision adopted the construction which is often repeated in the prevailing opinion, that since the legislature has occupied the field of occupational diseases it thereby indicated an intention to abrogate the employees' common law right to recover from his employer damages for all occupational diseases, then the *Triff* case squarely holds contrary thereto, because the Ohio statute expressly provided compensation for occupational diseases. But if the holding of this court is, as the prevailing opinion sometimes indicates, that compensation shall be the exclusive remedy only in case the disease contracted is included within the schedule of diseases adopted by the legislature, then that question was not presented to the court in the *Triff* case, because silicosis was not included in the Ohio schedule. But that case does hold that the common law remedy is excluded only in case where the very disease contracted is contracted in such a manner as to become compensable under the statute. Under such a construction of the statute it would make no difference whether silicosis was included in the schedule or not, unless the employee contracted a disease which was compensable, in a manner which was compensable then his common law right of recovery against his employer for negligence was not abrogated. That such was the holding in that case is clearly shown by the fact that the dissenting opinion, as above

mentioned, pointed out the administrative difficulties under the new statute, which only provided compensation for silicosis, as our statute does, in a very limited type of silicosis case which must be contracted within the time and under the conditions prescribed by the statute. Under the statute and the constitutional provision there involved and the surrounding facts and circumstances the court might well have decided the case the other way without giving any support to the position taken here in the prevailing opinion, but it could not hold as it did without supporting the position contended for in this opinion.

In this connection attention is again called to the fact that under the language of the exclusive remedy provision of our occupational disease statutes, the employee's common law remedy against his employer has been abrogated, either in all cases involving an occupational disease, or it has only been abrogated in cases where the employee contracts a disease under such circumstances that the statute provides compensation therefor. There is nothing in the wording of the exclusive remedy provision of our statute that would justify a construction that the recovery of compensation is the exclusive remedy in all cases where a disease is contracted which is included within the schedule of occupational diseases, but is not the exclusive remedy in the case of occupational diseases which are not so scheduled. To so construe our statute would be to entirely disregard the language of our statute, and would not be construing the same but would amount to judicial legislation. The statute either says that the right to recover compensation is the exclusive remedy of the employee against his employer in all cases of disease or injury to health, or it says the right to recover compensation is the exclusive remedy only in cases of disease or injury to health where compensation has been provided therefor.

The prevailing opinion strongly urges and the concurring opinion of Mr. Justice Wolfe is based almost entirely on the grounds that under my construction of this statute there will be great practical difficulties in administering the law.

Such matters can only be properly considered to the extent that they tend to show the legislative intention. Otherwise we are not construing what the legislature has enacted but are in the field of judicial legislation. There is nothing before this court which shows that the legislature had such supposed difficulties in mind when it enacted this statute and therefore such difficulties, if they exist, have very little tendency to show the legislative intention. There are many cases, including most of the cases cited herein, where the construction of the statute involved the same practical difficulties which would be encountered here, yet in not one of them did the prevailing opinion ever consider such difficulties as showing a legislative intention.

Most of the supposed difficulties are eliminated by the fact that under this construction it is only in cases where no compensation is provided for the injury in question that an action at common law can be maintained. Thus where an employee will become totally disabled within two years after his last employment with the employer against whom he claims, he cannot recover for the period during which he is only partially disabled either by common law action or under the compensation act because compensation has been provided for the disease he suffered although not for all the elements of his damage. In other words, where he comes within the class of injuries for which compensation is provided, the recovery of such compensation becames his exclusive remedy even though he suffers damages for which no compensation is provided. See *Ætna Life Ins. Co.* v. *Ind. Com.*, supra, and *Hyatt* v. *Northwestern Hospital*, supra.

I do not agree that there will be the great difficulty pictured in the prevailing opinion to determine liability between several employers. Before an employee can recover damages from any of his previous employers he must, the same as he has always had to, establish that such employer proximately caused his injuries. The fact that over a period of years an employee has worked for many employers may in some cases prevent him from establishing a claim against any of them but that does not indicate an intention on the

part of the legislature to take away the right to recover even from such employees who can establish their claims against one or more of their previous employers. I feel sure that no case can be found where a court has taken such matters into consideration in determining the legislative intention.

Many undesirable results will flow from the construction which the prevailing opinion has placed on this statute. Under this statute the only persons who can recover compensation are such employees who contract silicosis and become totally disabled therefrom within two years from the last day on which they worked for the employers against whom they claim the right to recover. In view of the normally long period between the time when the disease becomes first discernible by a medical examination and the time when an employee becomes totally disabled, it is probable that many employees who contract silicosis as a result of their employment will not become totally disabled within two years of their last harmful employment. This will be especially true in the future because under this act periodic medical examinations are required, and when it is discovered that an employee has contracted that disease he will not be able to retain employment in that kind of work when it is probable that he will become totally disabled therefrom within two years. Although there may be many cases in the future where injury and death from silicosis will be caused by the negligence of the employer, under this decision none of them will ever be able to recover damages therefor, even though no compensation is provided for such cases. I cannot convince myself that the legislature ever intended to create such a situation. I therefore conclude that this case should be reversed.