SYLVESTER DeNIO v. WESTERN ALLOYED
STEEL CASTINGS COMPANY AND ANOTHER.

103 N. W. (2d) 384.

May 27, 1960—No. 37,889.

*Donald C. Savelkoul*, for relator.
*Shepley, Severson & Bey*, for respondents.

FRANK T. GALLAGHER, JUSTICE.

Certiorari upon the relation of employee to review a decision of the Industrial Commission.

Employer and its insurer agree that the statement of facts in employee's brief is substantially in accord with the evidence but claim there should be included the additional material fact that Dr. Sumner Cohen testified that he could not make a diagnosis of tuberculosis.

According to the evidence Sylvester DeNio, employee, was born March 10, 1902, is married, and has four children. On May 2, 1941, he went to work for Western Alloyed Steel Castings Company, referred

to herein as employer, where he worked steadily for 16 years. He had a physical examination when he was hired. He worked as a "grinder" and "chipper," performing his work in the "cleaning room" which was connected to the foundry. Employee testified that in the performance of his duties he encountered dusty, dirty, and smoky conditions and that he made complaints to the plant officials with respect to those conditions.

While he was working for the employer certain X-rays were taken from 1945 to 1953, but none were taken of this employee during the last 4 years of his employment with that firm, nor, according to the employee, did anyone ever discuss the results of his X-rays with him. He claims that toward the end of his employment with the employer he became tremendously tired after 8 hours of work and could barely drag himself home. He also claimed he became short of wind and felt as if he had a pressure on his chest and that he had difficulty in lifting and climbing.

According to the record the employer went out of business in 1957. June 28, 1957, was the last day of work for employee. At the time of his termination he was making $79.20 for a 40-hour week.

After being laid off, the employee secured a job at American Hoist & Derrick Company where he worked in his craft of chipper in the firm's foundry from August 28 to September 16, 1957. After he was hired, employee was required to undergo medical examinations and as a result his physical disability was discovered and he was involuntarily separated from that company. In that connection that employer stated that the employee was a very good worker but was terminated due to: "1. Possible 2nd stage silicosis. 2. Possible tuberculosis. He is able to work in other than foundry work."

Employee was then unemployed until April 8, 1958, at which time he secured work of a janitorial and custodial nature at Meadowbrook Manor. He continued in such employment up to the time of the hearing in this matter, but at a reduced rate of pay of $1.25 per hour for a 45-hour week, or $56.25 per week. At the time of the hearing he complained of a shortness of wind and inability to walk far, climb steps, or run; that he tired quickly; that when he lifted something he would get weak and short of breath; and that if he stooped over he became dizzy.

Dr. Sumner Cohen, a specialist in lung diseases, testified in behalf of the employee. He first examined him on July 17, 1958. At that time he took a rather detailed history of the employee, especially of his working years. He took X-rays of his lungs, made physical examination of the lungs and heart, and made some pulmonary function studies, breathing tests, and fluoroscope tests. After that examination his diagnosis was: "I feel the diagnosis here would be silicosis, with some conglomeration, in other words, it was a little further advanced than Stage No. 1, and he also had findings suggesting pulmonary emphysema as a basis for the symptoms of which he was complaining."

In explaining what was meant by conglomeration, the doctor said that the earlier stages of silicosis result in increase in fibrosis plus small nodules in the lung. After a certain length of time a number of these small nodules come together and form larger nodules, or one large nodule.

With respect to emphysema, the doctor said that it can occur with other diseases but it is usually a condition with silicosis. When it occurs with silicosis, shortness of breath is the main symptom suggesting emphysema. The doctor said that he made no test for tuberculosis as he understood from Dr. Myers' reports that the tests were positive.

In examining the X-rays, Dr. Cohen said that the X-ray of April 11, 1945, indicated a normal chest. The X-rays commencing with April 11, 1946, showed a development of silicosis. In the physical examination made by Dr. Cohen he had difficulty in hearing breath sounds and heart tones. The breathing tests indicated a "definite reduction in his ability to breathe normally." Employee's diaphragm on the right side moved rather sluggishly on ordinary breathing.

After hearing a lengthy hypothetical question which contained a number of assumptions dating from employee's birth, the doctor was of the opinion that his diagnosis of silicosis with emphysema was accurate and that the employee's condition could only have arisen from his work in employer's foundry. He did not believe that the more recent exposure for the short period with the American Hoist & Derrick Company "played a role in this disease, since it was present apparently long before he went to work for that Company."

Dr. Cohen was of the opinion that this employee could work but should put limitations on the type and severity of the work. The doctor would not recommend that he return to any occupation where he would have further exposure to silica dust, nor work necessitating heavy physical exertion. He thought that the employee was capable of doing his work at Meadowbrook Manor if he was able to control excessive exertion.

Dr. J. Arthur Myers, also a specialist in diseases of the chest, testified on behalf of the employer and insurer. His diagnosis of the employee's condition was silicosis. He thought that the silicosis was in stage 1 and said that he had never seen stages 1 or 2 to be disabling. His testimony was in conflict with Dr. Cohen's testimony with respect to breath sounds, diaphragm motions, and the presence of emphysema, although he did not take any breathing tests of the employee. It was Dr. Myers' opinion that there was no such thing as disablement from work, regardless of the kind of work, where silicosis is either stage 1 or 2. When questioned as to stage 3, he did not "regard silicosis as disabling then, it's the complications." It was his comment that many persons with stage 3 silicosis work regularly without complications.

The Industrial Commission referee found that on June 28, 1957, the employee suffered personal injury which arose out of his employment by reason of the fact that on that date he became partially disabled from an occupational disease known as silicosis; that said disease was due to and caused by the nature of his employment with employer; and that it was contracted within 3 years from the date of the employee's last exposure at employer's plant.

The referee also found that the employee was affected to such a degree that it was unduly hazardous for him to continue in any employment involving the hazard of exposure to silica; that his condition was in no way influenced by exposure while employed at American Hoist; and that employee sustained no temporary total disability by reason of said occupational disease.

The referee ordered that the employee should not engage in any employment involving the hazardous exposure to silica. He was awarded against employer and its insurer retraining for a new occupation and

compensation during such retraining at a weekly rate of $45 for a period not to exceed 25 weeks. In the event retraining benefits were not accepted by the employee, he was awarded against the employer and its insurer compensation for not to exceed 25 weeks for temporary total or temporary partial disability during his unemployment following the removal from said hazardous employment.

The commission affirmed the referee's decision in all respects and was of the opinion that at no time did the medical testimony indicate that the employee was totally disabled from silicosis.

The employee assigns that the decision of the commission is unwarranted by the evidence and is not in conformity with the terms of the Workmen's Compensation Act and failed to find any total disability; that the commission erred in not finding the employee disabled within the meaning of M. S. A. 176.66, subd. 1, and in not awarding him compensation pursuant to § 176.66, subd. 2; and that it erred in applying the provisions of §§ 176.662 and 176.664.

■  We cannot say as a matter of law that the decision of the commission is unwarranted by the evidence. It is true that the commission failed to find that the employee was ever totally disabled. An examination of the testimony of Dr. Cohen and Dr. Myers discloses that neither doctor indicated that the employee was at any time totally disabled from silicosis.

The employee argues, however, that there was a period of 7 months from the time his employment with American Hoist terminated until the time he took on the janitorial and custodial duties at Meadowbrook Manor that he was totally disabled from earning full wages in his former employment because of the silicotic condition contracted while he was employed by employer. It is undisputed that during that 7-month period the employee was out of work but from the testimony of both doctors the commission could have found, as it did, that the employee sustained no temporary total disability by reason of his occupational disease.

■  In connection with employee's second claim that the commission erred in not finding him disabled under § 176.66, subd. 1, and in not awarding him compensation under § 176.66, subd. 2, we are confronted with § 176.664, which provides in part:

"Compensation is not payable for partial disability from silicosis or asbestosis, except where such partial disability follows a compensable period of total disability."

Here, the evidence supports the commission's finding that the employee did not sustain temporary total disability by reason of the occupational disease; that being so, compensation is not payable for partial disability from silicosis or asbestosis. Under those circumstances we are unable to find reversible error on the part of the commission.

It is the employee's position that the above-quoted provision of § 176.664 is unconstitutional if applicable here.

In attacking the constitutionality of the section, the employee argues with much sincerity and emphasis that it discriminates against two classes of workers in that only workers partially disabled from silicosis and asbestosis are prevented from receiving compensation. He contends that if he incurred his present disability from any occupational disease other than silicosis or asbestosis there would be no question that he would be entitled to compensation. He, therefore, claims that § 176.664, insofar as it provides that compensation is not payable for partial disability for silicosis or asbestosis except where it follows a compensable period of total disability, establishes an unreasonable, arbitrary, and capricious classification and is therefore unconstitutional.

The employee argues that he was disabled because of a well-known occupational disease and that the legislature did not intend to discriminate against him because his disability resulted from the contraction of silicosis. He cites the report of the Legislative Interim Committee on Occupational Diseases, January 1943, and claims that the legislature intended to adopt an all-inclusive act with respect to those unfortunate workers who contract disabling occupational diseases.

The employee's argument is well presented. The provision under attack, however, does provide that compensation is not payable for partial disability from silicosis or asbestosis, except where it follows a compensable period of total disability, which is not shown here. Regardless of what our personal feelings may be with reference to inclusion of these diseases on the same basis as other occupational diseases, the matter is a legislative one to correct rather than a judicial one. For

those reasons we find no reversible error on the part of the commission.

Other jurisdictions have statutes denying compensation for partial disability due to silicosis. The case of Cifolo v. General Elec. Co. 305 N. Y. 209, 112 N. E. (2d) 197, considered the constitutionality of a statute restricting workmen's compensation benefits to workers totally disabled by silicosis. The court held there that the legislature acted within its power in so providing, citing cases. Similar statutes of other states denying awards for partial disability from silicosis have been upheld. Masich v. United States Smelting, Refining & Min. Co. 113 Utah 101, 191 P. (2d) 612; Moffett v. Harbison-Walker Refractories Co. 339 Pa. 112, 14 A. (2d) 111.

Affirmed.

MR. JUSTICE LOEVINGER, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.