## YOUNG v. SALT LAKE CITY.

No. 6079.   Decided May 5, 1939.   (90 P. 2d 174.)

*Gaylen S. Young,* of Salt Lake City, for appellant.

*Fisher Harris,* City Attorney and *E. R. Christensen* and *Gerald Irvine,* Asst. City Attys., all of Salt Lake City, for respondent.

PRATT, Justice.

Eli Forbes Bailey, a laborer, was employed by Salt Lake City. He was put to work painting trucks. This he did using a paint spray. No mask was furnished him. He inhaled the vaporized paint, received lead poisoning and died. His work commenced March 24, 1935; he became ill April 10, 1935; and he died about April 15, 1935. These facts are assumed to be true as they are the allegations of a complaint to which a demurrer was sustained and the complaint dismissed. This appeal is from the lower court's sustaining of the demurrer and its dismissing of the action.

Mr. Bailey left as his sole heir at law, his mother Olive Bailey Young. She made application to the State Industrial Commission for compensation, under and pursuant to Section 42-1-43, R. S. U. 1933, of our Workmen's Compensation Law, which provides for compensation for injury or death "by accident arising out of or in the course of his employment." The Commission rejected her application on the ground that Mr. Bailey's illness was an "occupational disease" and not within the provisions of the law.

Subsequently, Mrs. Young as administratrix of her son's estate, brought an action under Section 104-3-11, R. S. U. 1933, which section reads in part as follows:

"Except as provided in chapter 1, of Title 42, when the death of a person not a minor is caused by the wrongful act or neglect of another,

his heirs, or his personal representatives for the benefit of his heirs, may maintain an action for damages against the person causing the death * * *."

Chapter 1, Title 42, referred to in the first few words of the above quotation, refers to our Workmen's Compensation Law. Section 42-1-57 of that law (R. S. U. 1933) so far as applicable here reads as follows:

"The right to recover compensation pursuant to the provisions of this title for injuries sustained by an employee, whether resulting in death or not, shall be the exclusive remedy against the employer, except as in this title otherwise declared * * *."

The City demurred to Mrs. Young's complaint alleging that her action was barred by Section 42-1-57, R. S. U. 1933, above quoted. It is the ruling on that demurrer which forms the basis of this appeal.

In reading this decision it should be kept in mind that the facts assumed by us are very limited. Had the case been tried upon its merits a different picture might have developed. If Mr. Bailey's illness was an occupational disease, the lower court was in error; if an accidental injury, it was a correct ruling.

We invite attention to the annotations in *Industrial Comm. of Ohio* v. *Roth*, 98 Ohio St. 34, 120 N. E. 172, 6 A. L. R. 1463; *Tintic Milling Co.* v. *Ind. Comm.*, 60 Utah 14, 206 P. 278, 23 A. L. R. 325; and 90 A. L. R. 619. Numerous cases of inhalations may be found there. See also the following Utah authorities: *Tintic Milling Co.* v. *Ind. Comm. of Utah*, 60 Utah 14, 206 P. 278, 23 A. L. R. 325 (a man gassed in a mine flue, held accidental); *Bamberger Coal Co.* v. *Ind. Comm. of Utah*, 66 Utah 203, 240 P. 1103, (over-exertion in loading coal, held not accidental); *Hammond* v. *Ind. Comm. of Utah*, 84 Utah 67, 34 P. 2d 687, (another over-exertion case, held accidental); *Amalgamated Sugar Co.* v. *Ind. Comm. of Utah*, 56 Utah 80, 189 P. 69, (inhalation of carbon monoxide in lime kiln, held accidental); and *Thompson* v. *Ind. Comm. of Utah*, 82 Utah

247, 23 P. 2d 930, (shaking a dust collector resulted in a particle of dust getting in the eye. The Court refused to set aside the Commission's finding that it was not accidental. This case is interesting and close as the eyes were already giving out under the work, but Doctor Hetzel testified that it was something getting in the eye at the time that caused the particular injury in question). We cite also a very interesting case in Colorado—*United States Fidelity & Guaranty Co.* v. *Industrial Commission*, 76 Colo. 241, 230 P. 624. It held that the inhalation of an unusual amount of gas was accidental.

Various expressions have been used in the attempt to distinguish the accident from the occupational disease. Some of these we quote: *Tintic Milling Co.* v. *Ind. Comm. of Utah*, 60 Utah 14, 206 P. 278, 283, 23 A. L. R. 325 (cited above):

"Injury was traceable to a particular time, place, and circumstance."—referring to an accidental injury.

*Industrial Comm. of Ohio* v. *Roth*, 98 Ohio St. 34, 120 N. E. 172, 6 A. L. R. 1463-1467, 2nd column:

"A disease contracted as a direct result of unusual conditions connected with the work, and not as an ordinary or reasonably to be anticipated result of pursuing the work, is to be considered an accidental injury."

*Peru Plow & Wheel Co.* v. *Industrial Commission*, 311 Ill. 216, 142 N. E. 546;

" 'Occupational Diseases' are not covered by the Compensation Act [Smith-Hurd Stats. c. 48, § 138 et seq.], although not all diseases are to be excluded therefrom; an occupational disease being a diseased condition arising gradually from the character of the employee's work, but it is not an 'accident.' 'An accident,' as contemplated by the Compensation Act, is distinguished from an occupational disease, in that it arises by some definite event, the date of which can be fixed with certainty, but which cannot be so fixed in the case of occupational diseases.

"One of tests to distinguish an 'occupational disease' from disease resulting from injury caused by accident, as respects whether remedy

for recovery of damages is limited to Workmen's Compensation Act, is that disease must be traceable to definite time and place of origin and there must be some definite thing happen which can be pointed to as immediate cause of breakdown, although employee may have been able to work in similar conditions for considerable period of time prior to happening of event which was immediate cause of breakdown." *General Printing Corp.* v. *Umback*, 100 Ind. App. 285, 195 N. E. 281.

"Lead poisoning which is gradual and cumulative over long period of time is not 'accidental injury' or disability within meaning of compensation statute." *Cannella* v. *Gulf Refining Co. of Louisiana*, La. App., 154 So. 406, 407.

"It is within the common knowledge of men that lead poisoning is a disease incident to the occupation of a painter, and if this young man, although employed as a common laborer, undertook in the course of his employment to do the work of a painter, and by the reason thereof, in the natural and due course of events, contracted this disease as an incident thereto, it is the end of the controversy. But it is also common knowledge that in the occupation of a painter the exposure is so slight that this disease is slow and insidious in its development, and chronic in its character. In fact, the history of the development of this disease in this occupation shows that it is a matter of years instead of days, and that many escape altogether. * * * yet a case of lead poisoning developed in five weeks by a man employed in a white lead factory, who was furnished no respirator and was not advised that the white dust on his hands and mustache was poison, is reported by medical authorities as an extreme case of the rapid development of this disease. * * * There are cases recorded by reputable medical authorities where acute lead poisoning has developed immediately by sudden exposure to large quantities of dust, vapor, and gases from broken packages of lead, and from fumes of molten lead; but such cases are the result of accident or misadventure, that may happen to any person, regardless of his occupation. * * * We are therefore of the opinion that the term 'occupational disease' must be restricted to a disease that is not only incident to an occupation, but the natural, usual, and ordinary result thereof; and held not to include one occasioned by accident or misadventure." *Roth* v. *Industrial Commission of Ohio*, 7 Ohio App. 386, affirmed 98 Ohio St. 34, 120 N. E. 172, 173, 6 A. L. R. 1463. See also, *Quality Milk Products* v. *Linde*, 159 Okl. 256, 15 P. 2d 58.

From these cases, both local and foreign, we learn that if the illness is one commonly recognized as incident to the

particular occupation, it is an occupational disease. The time taken for the effects of the occupation to become serious is not the governing factor. Some people are less resistant to imperfect conditions than others. Thus to stress the length of time as a basis of determining the accidental nature of the illness is to adopt a rule which may, in many cases, be governed by the bodily resistance of the individual. From the fact that Mr. Bailey succumbed to the lead poisoning in the vapor in a comparatively short time, we should not conclude that the illness was accidental. Were we to adopt such a rule, the dividing line between an occupational disease and an accident would become extremely hazy as the periods of time for each approached unity.

We should ascertain first if the illness is one commonly recognized as incident to the usual performance of the occupation. If it is found not to be, then the question of an occupational disease is ended. If it is incident to that performance, then ascertain if some definite circumstance took place of an unexpected or unusual nature—something that broke, or interjected itself into, the usual course of the performance of the occupation. And finally, ascertain whether or not this circumstance, if one there be, accelerated or changed the effect of, the otherwise resultant occupational illness. If it did, then that illness becomes the result of an accidental injury. The Colorado Gas case is an illustration of this principle. The breathing of an unusual amount of gas was held accidental. In our lime kiln case, the pumps failed to work properly, thus the carbon monoxide gas was not excluded from the kiln. In the mining flue case the gas mask became ineffective. Ineffective mask, defective pump, unusual amount of gas—all circumstances of an unexpected nature. But it should be kept in mind that, from the fact that the unexpected or unusual circumstance may accelerate the illness, we must not reason backward and say that when the period of exposure to the imperfect conditions before illness is short in a given case, it proves that there was some unusual circumstance about the per-

formance of the occupation in that case that made it accidental. The result must be traceable to a particular circumstance, which should be identified as to time and place, and not merely inferred.

The following two paragraphs of Mrs. Young's complaint contain the facts for the application of the principles we have set out in this case:

"That between about March 20, 1935, and April 10, 1935, the deceased Eli Forbes Bailey, was employed as a common laborer by the defendant. That in connection with said employment on or about said March 20, 1935, the defendant furnished said deceased with, and requested him to use a painter's spray gun with which to paint some automobile trucks. That to paint with a painter's spray gun without the use of a painter's mask is and was during all times herein mentioned dangerous, unsafe and deadly in that the said spray gun when being used throws off numerous atomized or vaporized particles of paint and the one using said spray gun, unless he uses a painter's mask, will inhale and take into his system through the nostrils and mouth much of said atomized and vaporized material which after a time will poison the one inhaling the same all of which during said times the defendant well knew. That said deceased was not and never had been a painter by trade, which the defendant well knew, and he did not know of or understand, the dangers in using said spray gun without a painter's mask. That during all of said times the defendant failed, refused and neglected to furnish the said Eli Forbes Bailey with a painter's mask to use in connection with said spray gun. Thereupon the said deceased worked and continued to work with said spray gun without the use of a painter's mask and from March 24, 1935 to April 10, 1935 the said deceased at the order and request of defendant used in said spray gun automotive enamel as well as paint with a white lead base; that during said time the deceased not being aware of the fact was inhaling into his system through his nostrils and mouth the atomized and vaporized enamel and paint when on April 10, 1935, he became ill therefrom and began suffering intense pain from cramps and vomiting spells and died five days later from lead poisoning."

"That the painter's mask is in common and general use in the carrying on of the painting business and the defendant knew such fact, or should have known such fact, but in the face of the same said defendant negligently failed to furnish the said deceased with appliances of ordinary character and reasonable safety."

It is to be noted that Mr. Bailey suffered an illness which he did not know might follow from breathing the vapor. The city did not give him a mask. But so far as these pleadings are concerned, no circumstance occurred in its performance which differed from the usual performance of such labor of painting with a spray gun. The failure to give him a mask, whether deliberate or through carelessness, was not accidental. The unusual or the unexpected circumstance that classifies the illness as accidental must occur in the events leading up to the illness. One may take employment the effect of the performance of which, upon his health, is entirely unknown to him. He may perform his work in the ordinary and usual way, with the ordinary and usual results incident to the health of one so engaged. From the fact that he didn't know what those results would be, we must not conclude that the resultant illness, which to others with better knowledge would be an occupational disease, would, to him, be an accidental injury. Lack of knowledge of results is not the circumstance to which the illness must be traceable. That circumstance must lie in the causal connection between the occupation and the illness.

From what has been said, we are of the opinion that the facts as stated in the complaint show that the Industrial Commission does not have jurisdiction. The order of the lower court sustaining the demurrer, and the judgment of that court dismissing the action, are set aside and the case remanded. Costs to appellant.

MOFFAT, C. J., and WOLFE, LARSON, and McDONOUGH, JJ., concur.