**2021 UT 64**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

LAYNE KAY and EMILY KAY,
*Appellees*,

*v.*

BARNES BULLETS,
*Appellant*.

No. 20180821
Heard November 13, 2019
Filed November 4, 2021

On Appeal of Interlocutory Order

Fourth District Court, Nephi
The Honorable Anthony L. Howell
No. 150600010

Attorneys:

Justin D. Heideman, Christian D. Austin, Provo, for appellees

Brett N. Anderson, Scott R. Taylor, Salt Lake City, for appellant

CHIEF JUSTICE DURRANT authored the opinion of the Court, in which
ASSOCIATE CHIEF JUSTICE LEE, JUSTICE HIMONAS, JUSTICE PEARCE, and
JUSTICE PETERSEN joined.

CHIEF JUSTICE DURRANT, opinion of the Court:

**Introduction**

¶1 Layne Kay contracted lead poisoning while working at Barnes Bullets (Barnes). The Workers' Compensation Act (WCA) and the Occupational Disease Act (ODA) normally bar employees like Mr. Kay from suing their employers over work-related ailments. But a narrow exception to the WCA lets them sue over injuries caused by an employer's intentional act. Mr. Kay sued Barnes under this exception, arguing that Barnes intentionally poisoned him by making him melt a large amount of lead without a respirator. Barnes moved for summary judgment, asking the district court to rule that the

WCA bars Mr. Kay's claim because Mr. Kay did not present sufficient evidence that Barnes acted intentionally. The district court denied this motion, a decision Barnes asks us to reverse on this interlocutory appeal.

¶2 Instead, we vacate the district court's decision and remand with instructions to address a key issue lurking behind the scenes: whether Mr. Kay's lead poisoning is actually an occupational disease, governed exclusively by the ODA, and therefore potentially ineligible for the WCA's intentional-injury exception. Although both parties assume the WCA covers Mr. Kay's condition, Utah law has frequently recognized lead poisoning as an occupational disease. And because we have historically applied the intentional-injury exception only to cases governed by the WCA, if Mr. Kay's lead poisoning is an occupational disease, the ODA may bar his lawsuit. So, to resolve this issue, we remand this case to the district court.

## Background

¶3 Barnes is a bullet manufacturer located in Mona, Utah. Layne Kay began working there in August 2008, starting in the General Production Department where he prepped bullets for retail sale. Mr. Kay was well liked by his co-workers but struggled with the physical demands required for bullet production. In 2013, Barnes transferred him to its Ammunition Department, and then to its Shipping and Packaging Department, where he worked until his resignation in January 2016.

¶4 One of Mr. Kay's duties in the General Production Department was melting lead. While Barnes mostly makes lead-free bullets, it dedicates a "small percentage" of its operation to making bullets with lead cores. For years, Barnes made these bullets by buying scrap lead, cutting it into tiny bits, and melting it down using a small and relatively unsophisticated melting pot. But in 2013, when tests revealed that this process produced unsafe levels of airborne lead, Barnes stopped melting and began purchasing lead wire for its lead-core bullets.

¶5 Before it stopped melting lead, Barnes used several safety protocols in the lead-melting process: melting took place outdoors and employees wore overalls, leather gloves, and a face shield or goggles. But Barnes did not provide respirators to employees who melted lead until after the 2013 safety tests.

¶6 Barnes's employees melted lead "as necessary" because of the low demand for lead bullets. Due to this intermittent need, Barnes did not assign the job to a specific employee. Instead, supervisors, managers, and sometimes even the company's longtime

owner stepped in to do the job. Despite this, Mr. Kay melted lead far more often than his co-workers. Barnes's plant manager testified that the average employee melted lead roughly three days per year. But between November 2012 and May 2013, Barnes purchased over 40,000 pounds of scrap lead, the bulk of which it tasked Mr. Kay with melting. It was during this period that Mr. Kay began suffering from "respiratory distress, tremors and mood swings, chronic and persistent cough, neurological difficulties, and chronic fatigue."

¶7    Although Barnes stopped melting lead in September 2013, Mr. Kay nevertheless contracted severe lead poisoning that left him permanently disabled. He continued to experience tremors, mood swings, and chronic fatigue, and his lung health deteriorated to the point where he now uses a "rescue inhaler . . . after even the mildest exertions." He also suffers from "profound impairments to his memory and executive functions" that prevent him from "perform[ing] even unskilled, entry level jobs."

¶8    Mr. Kay sued Barnes over these injuries in April 2015. The parties stayed the litigation in November 2016 while Mr. Kay pursued a workers' compensation claim with the Utah Labor Commission. The parties resolved this proceeding in March 2018 after the Labor Commission awarded Mr. Kay $337,500.

¶9 Following the resolution of Mr. Kay's workers' compensation claim, the parties lifted their stay and Barnes filed for summary judgment in this case. Barnes argued that the WCA's exclusivity provision—which prevents tort suits against employers—barred Mr. Kay's claim. Mr. Kay argued that the exclusivity provision did not apply to his claim, because it fell under the recognized intentional-injury exception. According to Mr. Kay, because his supervisors knew melting lead was dangerous and Barnes was not complying with certain safety regulations, the company intentionally poisoned him.

¶10 The district court denied Barnes's motion, holding that a reasonable juror could infer intentional injury from Barnes's failure to comply with safety regulations and from the fact that Mr. Kay melted an amount of lead unprecedented in the company's history. Following this ruling, Barnes petitioned for an interlocutory appeal, which we granted. We have jurisdiction pursuant to Utah Code section 78A-3-102(3)(j).

**Standard of Review**

¶11 Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law."[1] We review a district court's denial of summary judgment de novo, affording its conclusions no deference.[2] And we view "the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party."[3]

**Analysis**

¶12 In Utah, workers' compensation claims are governed by "two separate but related chapters of the Utah Labor Code"—the Workers' Compensation Act and the Occupational Disease Act.[4] The WCA compensates employees for injury "by accident arising out of and in the course of the employee's employment."[5] The ODA, "in contrast, provides compensation for 'any disease or illness that arises out of and in the course of employment and is medically caused or aggravated by that employment.'"[6] Importantly, the two acts provide mutually exclusive remedies. The WCA "specifically does not provide compensation for 'disease[s]'"[7] and the ODA does not compensate "injuries covered by the WCA."[8]

¶13 Both statutes also make the workers' compensation system an employee's exclusive remedy for injuries or diseases contracted on the job. The WCA is a worker's "exclusive remedy" for "any

---

[1] UTAH R. CIV. P. 56(a).

[2] *Graves v. N. E. Servs., Inc.*, 2015 UT 28, ¶ 17, 345 P.3d 619.

[3] *R & R Indus. Park, L.L.C. v. Utah Prop. & Cas. Ins. Guar. Ass'n*, 2008 UT 80, ¶ 18, 199 P.3d 917 (citation omitted) (internal quotation marks omitted).

[4] *Rueda v. Utah Labor Comm'n*, 2017 UT 58, ¶ 26, 423 P.3d 1175 (opinion of Himonas, J.).

[5] UTAH CODE § 34A-2-401(1).

[6] *Rueda*, 2017 UT 58, ¶ 79 (opinion of Durrant, C.J.) (quoting UTAH CODE § 34A-2-103).

[7] *Id.* (alteration in original) (quoting UTAH CODE § 34A-2-102(1)(j)(ii)).

[8] *Id.* (citing UTAH CODE § 34A-3-111).

accident or injury" suffered in the course of employment,[9] while the ODA is the "exclusive remedy" for "diseases or injuries to health sustained by a Utah employee."[10] These exclusive remedy provisions "relieve[] employers of any common law liability" for work-related ailments.[11] And in exchange for protecting employers from private lawsuits, the WCA and the ODA allow employees to recover, through an administrative proceeding conducted by the Utah Labor Commission, for work-related diseases and injuries without showing fault.[12]

¶14 Our case law recognizes a narrow exception to this exclusive-remedy requirement for "injuries caused by an intentional tort."[13] This exception lets an employee maintain a private lawsuit against an employer when "an agent of the employer intentionally caused [his or her] injury."[14] But we have only applied this exception to claims governed by the WCA. We have never extended it to occupational disease claims. For example, in *Bryan v. Utah International*, where we first established this exception, the plaintiff's co-worker hit him with a "large cable."[15] And in *Mounteer v. Utah Power & Light Co.*, the next case addressing this exception, the plaintiff allegedly suffered from "emotional distress" resulting in "mental and physical" injuries.[16] Finally, in our *Help v. Chevron U.S.A., Inc.* cases, the plaintiff developed a permanent seizure

---

[9] UTAH CODE § 34A-2-105(1).

[10] *Id*. § 34A-3-102(3).

[11] *Help v. Chevron U.S.A., Inc. (Help I)*, 2009 UT 11, ¶ 16, 203 P.3d 962.

[12] *Id.*

[13] *Help v. Chevron U.S.A., Inc. (Help II)*, 2015 UT 81, ¶ 22, 361 P.3d 63.

[14] *Id.* ¶ 23. In such cases, an employee may pursue both a private lawsuit and a workers' compensation proceeding. *Id.* ¶ 86. But if the employee "recovers civilly against his employer," he or she "may no longer receive workers' compensation benefits and must reimburse the workers' compensation carrier to the extent the carrier paid workers' compensation benefits." *Id.* (citation omitted) (internal quotation marks omitted).

[15] 533 P.2d 892, 892 (Utah 1975).

[16] 823 P.2d 1055, 1058 (Utah 1991).

disorder following exposure to a cloud of "toxic gases."[17] The WCA, not the ODA, governed each of these cases.

¶15  Mr. Kay sued Barnes under this intentional-injury exception, claiming that the WCA's exclusive remedy does not bar his claim because Barnes intentionally caused his lead poisoning. In response, Barnes argued that the evidence in Mr. Kay's summary judgment opposition did not demonstrate sufficiently that his supervisors were "virtually certain" he would contract lead poisoning.[18] And Barnes claims the district court erred by failing to recognize this and by denying Barnes's motion for summary judgment. But addressing these arguments strikes us as premature because we are not convinced that Mr. Kay's lead poisoning falls under the WCA.

¶16  There is a significant question as to whether Mr. Kay's lead poisoning claim falls under the ODA, and, if so, whether it qualifies for the intentional-injury exception. Both parties treat Mr. Kay's condition as "a result of an accident or injury sustained in the workplace," and thus covered by the WCA.[19] Utah law, however, has frequently recognized lead poisoning as an occupational disease.[20] This past recognition leads us to question whether the ODA, not the WCA, is Mr. Kay's exclusive remedy. But since the parties have not briefed this issue, we decline to make this determination at this time.

¶17  This court first recognized lead poisoning as an occupational disease in *Young v. Salt Lake City*, a 1939 case.[21] There, we held that a city employee who contracted lead poisoning after spray-painting trucks without a protective mask could maintain a suit against his employer because his condition was an occupational disease, not an accidental injury.[22] We reasoned that the employee's lead poisoning

---

[17] *Help I*, 2009 UT 11, ¶ 1; *see also Help II*, 2015 UT 81, ¶ 17.

[18] *See Help II*, 2015 UT 81, ¶ 23 (explaining that, in order to prevail under the intentional-injury exception, "a worker must prove that an agent of the employer . . . . 'desired the consequences of his actions' or . . . acted with the knowledge that 'the consequences were virtually certain to result'" (quoting *Help I*, 2009 UT 11, ¶ 43)).

[19] *Dale T. Smith & Sons v. Utah Lab. Comm'n*, 218 P.3d 580, 581 (Utah 2009).

[20] *See infra* ¶¶ 17–18.

[21] 90 P.2d 174 (Utah 1939).

[22] *Id.* at 177–78.

was a "disease incident to the occupation of a painter," and the city's "failure to give [the employee] a mask, whether deliberate or through carelessness, was not accidental."[23] And we noted that "[l]ead poisoning which is gradual and cumulative over [a] long period of time is not [an] 'accidental injury' or disability within [the] meaning of [the] compensation statute."[24]

¶18 Two years later, in 1941, the legislature enacted the Occupational Disease Act, which listed "[p]oisoning by lead or its compounds" as one of twenty-seven specifically enumerated diseases eligible for compensation.[25] Lead poisoning remained on this list for the next fifty years, until 1991, when the legislature removed the enumerated list and broadened the ODA to cover "any disease or illness which arises out of and in the course of employment."[26] So during this fifty-year period, Utah law expressly recognized lead poisoning as an occupational disease.

¶19 But the fact that Utah law has frequently recognized lead poisoning as an occupational disease does not necessarily mean that, depending on the facts of a particular case, it could not instead constitute an accidental injury. It is entirely possible that Mr. Kay's claim properly falls under the WCA. Indeed, our divided opinion in *Rueda v. Utah Labor Commission* demonstrates that the classification of a workplace ailment as an accidental injury or an occupational disease is a complicated question.[27] But it is a question that must be addressed in this case given that we have never extended the intentional-injury exception to occupational disease claims.

¶20 Our concern is this: if we evaluate Mr. Kay's claim without addressing whether his lead poisoning is an occupational disease, future litigants might construe our decision as implicitly extending

---

[23] *Id.* at 176–77.

[24] *Id.* at 176 (citation omitted).

[25] 1941 Utah Laws 53, sec. 28.

[26] 1991 Utah Laws ch. 136, sec. 20; UTAH CODE § 35-2-107 (1991).

[27] 2017 UT 58. In *Rueda*, this court was "[l]amentably" divided on how to classify work-related ailments as either accidental injuries or occupational diseases in light of the ODA's 1991 amendments. *Id.* ¶ 1 (opinion of Himonas, J.). This division produced a "splintered opinion" with no majority, and in which the Labor Commission's ruling remained effective. *Id.*

the intentional-injury exception to claims governed by the ODA. And we hesitate to expand this narrow exception, especially without the benefit of full briefing on the subject. So we remand this case and instruct the district court to determine whether Mr. Kay's lead poisoning is an accidental injury or an occupational disease. And if it finds that Mr. Kay's condition is an occupational disease, we instruct it to further determine whether the intentional-injury exception should extend to his claim.[28]

¶21 Finally, in remanding this case, we recognize that the Utah Labor Commission has already adjudicated Mr. Kay's claim as an accidental injury under the WCA. So the district court should also determine what, if any, deference it owes to the Commission's determination.

¶22 We acknowledge that this is a daunting assignment. Our split opinions in *Rueda* complicate the fact-intensive task of distinguishing between accidental injuries and occupational diseases. And the question of whether to extend the intentional-injury exception to occupational disease claims is an open one. But we nevertheless remand this case because we believe the district court provides the best forum for resolving these potentially fact-heavy issues. And if these important issues come before us again after the district court's ruling, this approach will bring them to us in a posture where we can address them with the benefit of the district court's analysis and full briefing from the parties.

¶23 In sum, we have yet to extend the intentional-injury exception to occupational disease claims. And without the benefit of briefing on the subject, we decline to do so here. Instead, to ensure future litigants do not read this decision as an implicit extension of the intentional-injury exception to occupational diseases, we remand this case to the district court to determine whether Mr. Kay's lead poisoning is properly classified as an occupational disease. If so, we further instruct the court to determine whether the intentional-injury exception should be extended to cover Mr. Kay's claim. But if the court determines that the WCA covers Mr. Kay's lead poisoning, we instruct it to reevaluate Barnes's summary-judgment request in light

---

[28] In so doing, we encourage the district court to keep in mind that "[w]hen faced with questions of first-impression, trial judges should address them head-on" and "not reserve judgment in a manner that leaves the issues for resolution on appeal in the first instance." *Paxman v. King*, 2019 UT 37, ¶ 17, 448 P.3d 1199.

of the clarifications to the intentional-injury exception we announce in *Christiansen v. Harrison Western Construction Corp*.[29]

**Conclusion**

¶24 Utah law has frequently recognized lead poisoning as an occupational disease. This recognition raises a significant question as to whether the Occupational Disease Act, not the Workers' Compensation Act, covers Mr. Kay's claim, and whether he can avail himself of the intentional-injury exception. We therefore remand this case so the district court can determine in the first instance whether Mr. Kay's lead poisoning is actually an occupational disease and, if it is, whether the intentional-injury exception should be extended to cover his claim.

_____

---

[29] 2021 UT __. We also note that today's holding simply clarifies that the intentional-injury exception currently does not extend to the ODA. We are open to requests from future litigants to expand the exception to ODA claims. And at that time we will address the issue squarely with the benefit of full briefing.